**Henry J. N. TAUB, Appellant,**

v.

**Wilbur L. GINTHER, et al., Appellees.**

No. 8654.

Court of Appeals of Texas,
Beaumont.

March 4, 1982.

Rehearing Denied April 1, 1982.

W. Robert Brown, Sam Levy, Joyce Cox, Houston, Oscar Pena, Laredo, for appellant.

T. M. Phillips, Baker & Botts, Houston, Lawrence Mann, Nat B. King, Julio Garcia, Laredo, for appellees.

OPINION

CLAYTON, Justice.

Appellees, Wilbur L. Ginther and Howard C. Warren, brought this action against appellants, Henry J. N. Taub and William A. MacNaughton, to impose a constructive trust upon a portion of an oil, gas, and mineral lease in Webb County, Texas, known and hereinafter referred to as the Alexander Lease, and for damages. Dr. George M. Clement intervened asserting an

interest in the Alexander Lease by virtue of an assignment to him by Ginther and Warren in 1973. Following a lengthy jury trial, judgment was entered upon the verdict imposing a constructive trust upon a portion of the Alexander Lease in favor of Ginther and Warren, awarded appellees judgment against Taub in the sum of $2,677,322.53 (such sum including $1,500,000 as exemplary damages which was subsequently reduced, by an order of remittitur of the sum of $1,000,000), ordered Taub to account for and awarded judgment against him for one-half of all sums received by Taub from all production on the "Alexander lands." Judgment was also entered against MacNaughton, but no appeal has been perfected from such judgment. Taub, as appellant, and Ginther, Warren, and Clements, as appellees, and cross-appellants, complain of the judgment entered as against Taub.

As stated by appellees in their brief, this is not the first time this case has been in the courts of this State. The first jury trial culminated in jury findings almost opposite to those in the case at bar. However, Ginther and Warren's motion for new trial was granted on September 21, 1976. On May 4, 1977, Taub and MacNaughton filed motions for summary judgment which were granted. This judgment was reversed, and the case remanded for trial. See *Ginther v. Taub*, 570 S.W.2d 516 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.).

This case is presented to us by a record consisting of extensive and lengthy pleadings, a statement of facts containing more than 4,000 pages with more than 200 original exhibits. The facts are involved and greatly detailed, and we shall not give a recitation of all the evidence relating to every issue between the parties. The court's charge called for, and the jury gave, one hundred separate findings as to the issues submitted.

The record before us shows that appellees, Ginther and Warren, are independent oil and gas operators who have worked together since 1934 in the discovery and production of various oil and gas properties. For many years, Ginther and Warren have been interested in and instrumental in the development of oil and gas properties in Webb County, Texas. Among their acquisitions in such county was a 2716.46 acre oil, gas, and mineral lease known as the Alexander Lease, which they purchased on February 17, 1969, through James A. Mayo, a lease broker. Ginther and Warren executed an assignment of a $\frac{1}{32}$ overriding royalty interest in the Alexander Lease. This "Mayo Override" is not in dispute in this case.

Prior to February 1973, Ginther and Warren owned 66⅔ percent, and Taub owned 33⅓ percent of the working interest in the Alexander Lease. This lease required annual delay rentals of approximately $2,700.

By 1972, the financial situation of Ginther and Warren had deteriorated to the point that on October 31, 1972, they had petitioned the Bankruptcy Court for a Chapter XI Arrangement. Each attached an original schedule of assets to his inventory filed with the Bankruptcy Court, listing the Alexander Lease among his non-producing assets in Webb County.

A few days before the annual delay rental payment for the lease became due on February 17, 1973, Ginther instructed Warren to contact Taub in their behalf and requested him to pay the entire rental payment due on such date. The jury found that this contact resulted in an agreement by Warren with Taub that, if Taub would pay the entire delay rental payment, Ginther and Warren would assign all of their interest (66⅔ percent) in the Alexander Lease to Taub, subject to their right to reacquire their interest by repaying Taub within six months. On March 6, 1973, Ginther and Warren executed an assignment to Taub of only 16⅔ percent of their interest in the Alexander Lease. A dispute arose between the parties as to whether Ginther and Warren should have assigned their entire interest of 66⅔ percent instead of the 16⅔ interest.

On December 20, 1973, Ginther and Warren executed a "Correction Assignment," dated December 4, 1973, stating, in part, the following:

"Whereas, by instrument dated on or about March 6, 1973, there was transferred and assigned to Henry J. N. Taub an additional 16⅔% interest in the [Alexander Lease] but which assignment, except for a scrivener's error, should have been for an undivided 66⅔% interest therein; to which instrument as recorded in Volume 434, Page 66, Deed Records of Webb County, Texas, specific reference is here made for all purposes; *and the parties do here desire to rectify and remedy* said scrivener's error to the end that all of the leasehold interest shall be vested in Henry J. N. Taub as originally intended." (Emphasis added.)

Appellees based their cause of action upon pleadings asserting that MacNaughton and Taub entered into a conspiracy whereby Taub would secure Ginther and Warren's entire interest in the Alexander Lease; that a confidential relationship existed between Taub, Ginther, and Warren; and that Taub had abused or breached such relationship to the extent that they, Ginther and Warren, were entitled to the imposition of a constructive trust in their favor upon the 66⅔ percent interest in the Alexander Lease which was assigned to Taub by the "Correction Assignment" dated December 4, 1973.

Based upon the jury verdict, the trial court decreed the March 6, 1973, assignment by Ginther and Warren to Taub to be a valid and effective conveyance, and imposed a constructive trust upon the remaining one-half of Ginther and Warren's leasehold interest which was the subject of the December 4, 1973 "Correction Assignment."

Appellant, Taub, complains of error by the trial court in the imposition of a constructive trust upon the Ginther and Warren's interest in the Alexander which was assigned to Taub by the "Correction Assignment" dated December 4, 1973. His challenge to such action is based, inter alia, upon the legal and factual insufficiency of the evidence to support a finding of a confidential relationship, and the breach or abuse thereof so as to warrant the imposition of a constructive trust.

The jury found, in response to a special issue, that "a confidential relationship existed between defendant Taub and plaintiff Ginther, and Warren during 1973." In addressing the attack made upon this finding, we must review the relevant evidence and unchallenged jury findings in accordance with the standard of review stated in *Rourke v. Garza,* 530 S.W.2d 794, 799 (Tex. 1975), and in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We will not discuss the evidence and jury findings as to the nonappealing defendant, MacNaughton, except as to such that affects the actions of Taub.

Even though appellees place great importance upon the relationship existing as between Taub, Ginther, and Warren prior to 1973, we do not consider such evidence as controlling upon the question of a confidential relationship for the reason that the only question submitted to the jury confined such relationship to the period "during 1973." If the evidence raised such an issue, then the same was a question of fact to be determined by the jury. No issue was submitted or requested as to the existence of a confidential relationship between the parties prior to 1973, and there being no objection or request for such an issue by appellees, the same has been waived. *Glens Falls Insurance Co. v. Peters,* 386 S.W.2d 529, 531 (Tex.1965); *Tex.R.Civ.P. 279.*

The evidence shows that Ginther and Warren were independent oil and gas operators with over forty years of experience. They had been acquiring leases together during most of that time. Taub had been an investor in more than thirty of the transactions that Ginther-Warren had put together. Taub had been Ginther's friend for over twenty years. However, a similar degree of friendship has not been shown between Taub and Warren. Taub, as a result of his concern over Ginther's financial difficulties, called Ginther in the early part of 1973 to express his sympathy and offered his help. Subsequently, Ginther contacted Warren and requested him (Warren) to ask Taub to pay the delay rental payments on the Alexander Lease which

were due in February 1973. As a result of Warren's efforts, an agreement was made by Warren that, upon payment of such delay rental payments, Warren and Ginther would convey all their interest to the Alexander Lease, with the right to reacquire the interest upon repayment within six months.

MacNaughton, an attorney who had in the past represented Taub in several matters and who was then representing Ginther and Warren in their bankruptcy proceedings, prepared the assignment of Ginther and Warren's interest. The assignment and an order of approval by the Bankruptcy Court was prepared and presented to Ginther and Warren. Ginther expressed his dislike of the terms but, nevertheless, acquiesced in MacNaughton's advice or judgment, and the instrument was executed by Ginther and Warren on March 6, 1973. The assignment was recorded, and, on March 19, 1973, it was mailed to Taub. Upon receipt of the instrument, Taub discovered that Ginther and Warren had assigned only ⅙th (16⅔ percent working interest) of their interest instead of their ⅔rds (66⅔ percent working interest) in the lease, as provided by the agreement made by Warren.

Taub, upon receipt of the assignment instrument, recognizing the error (i.e., the assignment of ⅙th interest instead of Ginther and Warren's entire ⅔rds interest), contacted MacNaughton to obtain a correction of the assignment. Taub later received a letter from MacNaughton admitting the error. On August 13, 1973, Ginther and Warren came by MacNaughton's office to sign several instruments for the bankruptcy proceedings and, by coincidence, met Taub and Taub's son. At this time, an argument ensued about the Alexander Lease which ended with Taub telling Ginther that the six-month period within which he had to reacquire his interest in the Alexander Lease had expired, and the lease, as a result, belonged to him (Taub). At that time, he also told Ginther that the March 6th assignment was incorrect and asked that the instrument be corrected so as to convey Ginther and Warren's entire interest in the lease as was originally agreed. Ginther and Warren consulted MacNaughton about this

matter on December 12, and, during this consultation (Taub was not present), the jury found that MacNaughton failed to give them certain advice with reference to the "correction assignment" and that MacNaughton told them that if they would sign the instrument Taub would treat them better.

Following the meeting with MacNaughton, the attorney prepared the assignment, and, upon receiving it, Ginther and Warren signed the "correction assignment" on December 20, 1973. The jury found that Ginther and Warren "read and understood the language and effect of the [correction] assignment before signing and delivering same to Taub."

We deem it unnecessary to discuss or relate the evidence of all transactions following the execution and delivery of the correction assignment. The question before us concerns only whether a confidential relationship existed between the parties as would repose a trust by Ginther and Warren in Taub so as to cause them to execute such correction assignment.

The jury, in response to special issues, found, inter alia, that the only act of Taub which caused Ginther and Warren to execute the correction assignment was that Taub "request[ed] and accept[ed] the [assignment] from Ginther and Warren of their remaining interest in the Alexander Lease"; that there was no conspiracy existing between Taub and MacNaughton to "obtain the remaining interest in the Alexander Lease held by Ginther and Warren"; that a "purpose of Ginther and Warren in executing and delivering the [correction] assignment was to prevent their creditors from obtaining any interest therein."

Based upon the foregoing facts and jury findings, it is clear that appellees do not base their cause of action upon the enforcement of any promise by Taub that he would hold the interest conveyed by the correction assignment. There is no evidence to show that any such promise or agreement was ever made by Taub. This cause of action is one to enforce a constructive trust based

upon the violation of a confidential relationship existing between the parties.

Our Supreme Court has recognized "that confidential relationships may arise not only from the technical fiduciary relationship such as attorney-client, trustee-cestui que trust, partner and partner, etc.—which as a matter of law are relationships of trust and confidence—but may arise informally from 'moral, social, domestic or purely personal' relationships.... The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1963), citing *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948), and *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951).

■ A confidential relationship may occur when "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an over-mastering dominance on the one side, or weakness, dependence or justifiable trust, on the others." *Tuck v. Miller*, 483 S.W.2d 898, 906 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.), citing *Locke v. Thigpen*, 353 S.W.2d 249, 255 (Tex.Civ.App.—Houston 1962), rev'd on other grounds, 363 S.W.2d 247 (Tex.1963).

Brushing aside the testimony contained in the voluminous record before us which is not material to the question of the confidential relationship existing during the critical period inquired about in the issue submitted to the jury (i.e., "during 1973"), we find that at some time prior to February 17, 1973, Warren entered into an agreement with Taub by the terms of which Ginther and Warren would assign their entire remaining interest in the Alexander Lease upon the payment of the delay rentals due on February 17, 1973, retaining the right to reacquire such interest within six months. Ginther and Warren did not reacquire the interest by reimbursing Taub for the delay rentals paid. In addition to the $2,700 rental paid by Taub on February 17, 1973, Taub also paid $13,500 in delay rentals on February 17, 1974, and that the payment of $13,-500 was made by Taub in reliance upon the "correction assignment" of December 1973. These facts were found by the jury and are unchallenged by appellees.

At all times, from the date of the March 6, 1973 (the first assignment) until December 1973 (the date of the "correction assignment" which is sought to be set aside by appellees), Taub was insisting that the agreement was for Ginther and Warren to assign their entire interest and not the mere ⅛th interest as stated in the March 6th assignment. Taub insisted that the first assignment did not correctly state the agreement and insisted upon the "correction assignment." On several occasions there were heated arguments over this matter. Being fully cognizant of Taub's contentions, Ginther and Warren executed the "correction assignment" specifically stating that an error had been made and that the March 6th assignment should have correctly shown that they assigned their remaining ⅔rds interest in the lease instead of a ⅛th interest.

The jury further found that Ginther and Warren read and understood the language and effect of the "correction assignment" of December 1973 before signing and delivering it to Taub. The evidence of Ginther shows that the reason for the execution of the correction assignment was that they (Ginther and Warren) trusted Taub, and, "if we got the lease developed and repaid Taub," that "he [Taub] might restore us back to our one-third interest in the Alexander Lease each." He testified that Taub did not agree to that; that such was his (Ginther's) interpretation; that he did not discuss that interpretation with Taub "because I trusted him." Ginther further testified that "[w]e were willing to sign it [the correction assignment] because we figured Mr. Taub would hold it in his files, and when we made a good deal for him on the lease, then he'd restore us to our proper position." He also admitted that he did not have any promise from him (Taub) because "I didn't think it was necessary."

■ We find nothing in the record showing that Ginther ever communicated his intent or his belief that Taub would "restore

us to our proper position" to Taub. This was nothing more than a unilateral and subjective trust which alone is not enough to transform arms-length dealings into a fiduciary relationship. The fact that parties have had prior dealings with each other and that one party subjectively trusts the other does not establish a confidential relationship. *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966); *Thigpen v. Locke*, supra; *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957). The fact that one businessman trusts another does not create a constructive trust. *Tyra v. Woodson*, 495 S.W.2d 211, 213 (Tex.1973).

Under the facts of this case as related above, during the time period involved, the parties were in dispute and had several heated arguments with reference to the correction assignment. At all material times, Taub insisted that the agreement between the parties was that Ginther and Warren would assign to him all their remaining interest in the Alexander Lease. Ginther and Warren knew this was Taub's contention and that he was requesting the correction assignment to reflect the true agreement, and, with this knowledge, they executed the correction assignment. We find no evidence in this record which would justify Ginther and Warren's belief that Taub would later reconvey their interest to them.

Appellees contend that the evidence shows "not only the prior existence of a mutually close and trusting business relationship for nearly twenty years, but the continuation of that relationship throughout the events at issue in this case." They argue that even if Taub's evidence established as a matter of law that Ginther and Warren no longer had any reasonable basis for placing trust in him, however, it would not excuse Taub's duty to deal as a fiduciary with them citing *Johnson v. Peckham*, 132 Tex. 148, 152, 120 S.W.2d 786, 788 (1938), wherein the Supreme Court reversed a holding of the Court of Civil Appeals that the existence of a strained relationship between fiduciaries excused their burden of dealing fairly, honestly and reasonably with

each other. Appellees contend that "the relationship between Taub and Ginther and Warren having once been established, it obviously continued during 1973 under the record in this case." We do not agree. This argument assumes a confidential relationship existed between the parties prior to 1973. As we have pointed out, the existence of such a relationship is a question of fact to be determined by the jury. No issue was submitted or requested by appellees with reference to such relationship during such period of time. We cannot and we are not called upon to decide that such a confidential relationship existed as a matter of law. Moreover, even assuming, arguendo, that such a relationship did exist prior to 1973, the actions of the parties were such during 1973 as to clearly indicate that the relationship between the parties was not merely a strained relationship but was one of dispute, heated arguments, and a disagreement as to the agreed terms of their first assignment executed in March 1973. In any event, the rule as to a subjective trust, as stated in *Thigpen v. Locke*, supra, would remain the same.

Appellees contend the judgment was correctly entered by the trial court because of the jury findings that certain acts of MacNaughton caused Ginther and Warren to execute the correction assignment that Taub participated "in MacNaughton's abuse of confidential relationship with Ginther and Warren."

Appellees allege that "[t]his suit seeks to establish a constructive trust on behalf of the plaintiffs.... As will be shown the defendants each owed to plaintiffs fiduciary obligations which were breached.... Plaintiffs further allege that they were the victims of a conspiracy between Taub and MacNaughton...." These allegations, the evidence introduced and the charge submitted to the jury, clearly show that, in order to establish the fiduciary relationship, appellees relied upon the existence of a confidential relationship between Taub and Ginther and Warren. The jury found that a conspiracy between Taub and MacNaughton did not exist.

The confidential relationship between Taub and Ginther and Warren must be such as to justify the trust and confidence of Ginther and Warren in Taub as to cause them to execute the correction assignment. The acts of MacNaughton did not affect the relationship existing between Taub and Ginther and Warren. The relationship existing between these parties—Taub, Ginther, and Warren—was a personal one and was not created by any acts of MacNaughton. The jury found that the reason, insofar as the acts of Taub are concerned, causing Ginther and Warren to execute the correction assignment, was that Taub requested and accepted the assignment. The acts of MacNaughton related to the abuse of his own confidential relationship with Ginther and Warren and did not affect the existence of a confidential relationship with Taub.

Moreover, the jury found that "a purpose of Ginther and Warren in executing the and delivering the [correction assignment] was to prevent their creditors from obtaining any interest therein." This finding does not lend credence to any theory that Ginther and Warren executed the instrument because of the existence of a confidential relationship between them and Taub.

All other arguments made by appellees are in reply to appellant's additional points of error. In view of our disposition of this appeal, it is unnecessary to consider the remaining points of error and replies thereto, and appellee's cross-points are overruled.

■ We have carefully read and considered the entire record in this case, and, taking the testimony as a whole and in the light most favorably to appellees, we have concluded that there is no evidence of probative value of a justifiable trust and confidence on the part of Ginther and Warren in Taub such as will create a confidential relationship, one element of which is necessary to the creation and imposition of a constructive trust.

The judgment of the trial court is reversed, and we hereby render judgment that appellees take nothing.

All costs of this appeal are adjudged against appellees.

REVERSED and RENDERED.