Wilbur L. GINTHER et al., Petitioners,

v.

Henry J.N. TAUB, Respondent.

No. C–1218.

Supreme Court of Texas.

July 11, 1984.

Rehearing Denied Oct. 3, 1984.

Baker & Botts, Thomas M. Phillips and Louis L. Bagwell, Houston, Mann, Dickinson & Saldana, Lawrence A. Mann, Laredo, for petitioners.

Liddell, Sapp, Zivley, Brown & LaBoon, W. Robert Brown, Sheinfeld, Maley & Kay, Joyce Cox and Sam Levy, Houston, Oscar Pena, Laredo, for respondent.

CAMPBELL, Justice.

█ This is a suit to impose a constructive trust on an oil and gas lease and to collect actual and exemplary damages. Wilbur Ginther and Howard Warren sued Henry Taub and William MacNaughton. They alleged as one ground of recovery the narrow constructive trust exception to the rule that land titles may not rest in parol. This rule applies when an abuse of an existing confidential relationship is established by "strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the wrongdoer." *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex.1977). On the jury's verdict, the trial court rendered judgment for plaintiffs. The court of appeals reversed and rendered judgment that plaintiffs take nothing against Taub,[1] holding there was no evidence to support the jury's finding Taub was in a confidential relationship with Ginther and Warren. 631 S.W.2d 775. We reverse the judgment of the court of appeals, modify the judgment of the trial court, and as modified, affirm the trial court's judgment.

We do not reach the one ground of recovery addressed by the court of appeals. In the court of appeals, Ginther and Warren presented five alternative theories, supported by jury findings, for upholding a judgment in their favor. The alternative grounds are independent of the confidential relationship theory and were not addressed by the court of appeals. Because we dispose of the case on one of these alternative grounds, we recite the jury findings and evidence supporting it, without addressing other issues in the case.

Ginther and Warren were independent oilmen who, in 1969, acquired a 2,716-acre mineral lease in Webb County known as the Alexander Lease. The dealings of the parties in the Alexander Lease form the basis for the dispute.

Ginther and Warren had maintained their business relationship as oil developers for over 40 years. The oil glut of the late 1960s and early 1970s caused them severe financial difficulties. By 1972 their financial position had so deteriorated that they needed outside cash to pay the delay rentals to keep the Alexander Lease in force.

The delay rentals of approximately $2700 per year were due on February 17, 1972. Shortly before that due date, Ginther and Warren contacted Taub for help. They offered Taub one-third of the lease in return for his payment of the 1972 delay rentals. Taub accepted and Ginther and Warren conveyed the one-third interest. Taub's ownership of this one-third interest is not disputed.

After Taub became a part owner in the Alexander Lease, the financial condition of Ginther and Warren continued to deteriorate. In late 1972 they retained William MacNaughton, an attorney with expertise in both bankruptcy and oil and gas law. MacNaughton advised Ginther and Warren to file a Chapter XI bankruptcy rearrangement. Under the reorganization, the bankruptcy court controlled the Ginther and Warren assets.

---

1. MacNaughton did not appeal the portion of the trial court's judgment awarding actual and exemplary damages against him.

Taub also knew MacNaughton. Although Taub used other attorneys, Taub was one of MacNaughton's long-time clients. In addition, Taub and MacNaughton were business associates.

The problems with the Alexander Lease began in February 1973, shortly before the 1973 delay rental became due. MacNaughton misrepresented to Ginther and Warren that they could not use their own funds to make the delay rental payments during the Chapter XI proceedings. MacNaughton also told Ginther and Warren they could not make the delay rental payments out of the bankruptcy trust account even though the signed order prepared by MacNaughton and approved by the bankruptcy court specifically authorized such payments.

In desperation to keep the Alexander Lease alive, Ginther asked Warren to contact Taub to work out a deal for Taub to pay all the delay rentals. A few days before the lease expired, Warren finally contacted Taub by telephone. Warren orally agreed that if Taub would pay the rentals due on the Alexander Lease on February 17, 1973, Ginther and Warren would assign all of their interest to him subject to their right of reacquisition by reimbursing Taub for their share of the delay rentals within six months. This agreement was patterned on the so-called "Exxon deal" that Ginther and Warren had used over the years in some of their dealings with Exxon's exploration and production subsidiary. Ginther, Warren and Taub had several long-standing similar relationships involving pre-existing Exxon-type deals. All parties fully understood what an "Exxon-type deal" meant. Taub paid the delay rentals.

The evidence was disputed as to the reason, but on March 6, 1973, MacNaughton prepared and Ginther and Warren executed an assignment of only one-sixth (16⅔%) of the Alexander Lease to Taub. There was no mention in the assignment or in any collateral document of any reacquisition right. The order prepared by MacNaughton and approved by the bankruptcy court authorized only this one-sixth conveyance, with no mention of any reacquisition rights.

When and how strenuously Taub objected to the March 6th assignment as not being the agreement was hotly disputed at trial. The jury found that on August 15th Taub orally represented to Ginther and Warren that they could keep the one-half interest they claimed (and to which the recorded documents indicated their ownership), and that the dispute would be "at rest." Taub subsequently confirmed that representation by a letter dated August 17, 1973. Ginther and Warren testified that all dispute ended after this August settlement, until Taub again raised it in December.

Unknown to Ginther and Warren, the "dispute" over ownership of the one-half interest in the lease was kept alive in communications between Taub and MacNaughton. In a letter to Taub, MacNaughton stated there had been a "mistake" and that Taub should have received the full 66⅔% interest. MacNaughton also deleted the Alexander Lease from the bankruptcy schedule of assets and from the bankruptcy plan of arrangement without informing Ginther and Warren. On August 21, 1973, the bankruptcy court approved the plan.

By December, Webb County was enjoying an oil boom. Ginther and Warren owned rights in a Webb County gas field (the Pescadito Dome) not connected with the Alexander Lease. The Pescadito Dome interest was a prominent asset in their bankruptcy plan of arrangement. Development of the Pescadito Dome provided the prospect of returning their financial security after the bankruptcy and making the plan succeed. Taub held record title to this lease. Ginther and Warren owned an undivided equitable interest but needed Taub to execute a written assignment of their interest so they could proceed with the deal. Their agreement, known as the "Union Carbide" deal, provided for Ginther and Warren to repay Taub their share of the delay rentals out of the proceeds.

With the closing of the Union Carbide deal imminent, in early December Taub contacted MacNaughton and instructed him

to prepare a "correction assignment" from Ginther and Warren to him conveying their total 66⅔% interest in the Alexander Lease. Without informing Ginther and Warren, MacNaughton prepared and dated the correction assignment December 4, 1973 (the "December 4th Assignment"). MacNaughton sent a "no charge" statement to Taub for the preparation of the assignment. The jury found that MacNaughton acted as attorney for Taub in preparing the December 4, 1973 assignment and delivering the assignment to Ginther and Warren.

On December 11th Ginther and Warren went to Taub to request execution of the documents necessary for the Union Carbide deal. Taub then reasserted that he owned the entire Alexander Lease. Though he agreed to execute the papers for the Union Carbide deal, he made the Alexander Lease dispute the main topic of conversation. When Ginther and Warren said the question had already been settled, Taub told them, "Well, I believe if I were you boys, I'd go talk to Mr. MacNaughton tomorrow." Taub did not execute the Union Carbide deal papers at this meeting.

Ginther and Warren met with MacNaughton the next day. MacNaughton reopened the Alexander Lease dispute and induced Ginther and Warren to execute an assignment of their record one-half interest in the Alexander Lease. First, MacNaughton informed them for the first time that the Alexander Lease had been deleted from the plan of arrangement. Because of the omission, MacNaughton represented, they might have to go into Chapter XI bankruptcy again, unless they eliminated their record interest. Second, MacNaughton threatened them with loss of the Union Carbide deal. Third, MacNaughton suggested the "solution" was to transfer all of their recorded interest to Taub, who, MacNaughton represented, "will treat you better." They did not discuss what "treat you better" meant.

Ginther and Warren asked for time to think over the matter. A few days later Ginther telephoned MacNaughton to ask for an assignment to "look at." On De-cember 17th, MacNaughton sent them the previously prepared December 4th Assignment. It recited that the March assignment contained a scrivener's error and that the interest conveyed should have been and was corrected to be 66⅔%. MacNaughton sent a copy of the transmittal letter to Taub.

Taub forwarded the executed documents for the Union Carbide deal. Ginther and Warren finally on January 9, 1974 went to Taub's office and delivered the executed December 4th Assignment personally. Ginther told Taub, "I'm delivering this in accordance with my agreement with Mr. MacNaughton." Taub made no reply.

Ginther and Warren understood MacNaughton's representation that Taub would treat them better to mean that Taub would hold the Alexander Lease title in an Exxon-type deal. After Ginther and Warren subsequently negotiated a deal with New Hope Refineries to develop the Alexander Lease, Taub refused to reconvey the one-half interest to Ginther and Warren. This suit ensued.

The jury found that MacNaughton fraudulently induced Ginther and Warren to execute the December 4th Assignment by each of the three separate representations that they might lose the Union Carbide deal if they did not execute it, that Taub would treat them better if they executed it, and that they would be better off if they executed it. The jury also found Taub knowingly participated in MacNaughton's breach of MacNaughton's fiduciary relationship with Ginther and Warren.

■ We hold the jury findings of fraud by MacNaughton to benefit Taub support the imposition of the constructive trust remedy. Before explaining our holding, however, we address Taub's contention that he is entitled to a remand to the court of appeals.

■ In the court of appeals Taub urged that the evidence was factually insufficient to support a number of jury findings. When we determine that there is error in a judgment, we normally remand the cause

to the court of appeals for it to pass on the factual points within its exclusive jurisdiction. *McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964). But this Court may rule on the questions of law preserved to the court of appeals. *McKelvy v. Barber, supra.* A remand to the court of appeals is not necessary unless Taub attacked the factual sufficiency of the evidence supporting at least one necessary jury finding, for each alternative theory justifying recovery.

In oral argument, counsel for Ginther and Warren stated that, to avoid a retrial, Ginther and Warren would accept a judgment based on one of the five alternative grounds. In oral argument and post submission briefs, the parties have contested exactly which findings Taub questioned on factual sufficiency grounds. We look to the argument under the points to clarify the complaint made. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (1943). We have reviewed each brief Taub submitted to the court of appeals and have indulged every possible reasonable construction against a waiver of error. There is no point of error, no subpoint, and no argument under any point that the evidence was factually insufficient to support the jury's findings that *MacNaughton* breached his fiduciary duties to Ginther and Warren and committed fraud by his conduct inducing them to sign the December 4th Assignment.

Taub's sole position has been that a constructive trust against him cannot be imposed because of wrongdoing by Mac-Naughton. We disagree. The policy against unjust enrichment mandates that Taub not be allowed to retain the property he received as the beneficiary of Mac-Naughton's fraud. *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 562 (1948); *see also Morris v. Morris*, 642 S.W.2d 448, 450 (Tex.1982). In *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex.1974), this Court stated that constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with the basic principles of equity and justice. In *Meadows* we further stated that a transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another.

We recognize that the Statute of Frauds prohibits title to real property interests from resting in parol. However, a constructive trust based on a prior confidential relationship and unfair conduct or unjust enrichment escapes this rule. *Rankin v. Naftalis, supra.* The same rule applies in imposing the trust on a knowing or unknowing beneficiary of fraud, even though he is not the actual wrongdoer. In *Pope v. Garrett, supra,* we imposed a constructive trust on totally innocent beneficiaries of the wrongful act. Taub as a knowing participant, as found by the jury, deserves no better treatment in equity than an innocent beneficiary of wrongdoing, as in *Pope v. Garrett, supra.*

In the court of appeals Taub attacked the factual sufficiency of the evidence supporting the exemplary damages under any theory of recovery. Because counsel for Ginther and Warren requested this Court to render judgment on an alternative theory rather than face remand, we delete the recovery of exemplary damages.

We reverse the judgment of the court of appeals. We reform the judgment of the trial court to eliminate recovery of exemplary damages against Taub and, as reformed, affirm the judgment of the trial court.