Opinion issued August 28, 2008

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00400-CV






SPEEDEMISSIONS, INC., Appellant


V.


CAPITAL C ENTERPRISES, LTD., CAPITAL C MANAGEMENT, L.L.C.,
AND JASON B. COBB, Appellees






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2006-26768






MEMORANDUM OPINION


 This is an appeal from a final summary judgment rendered in favor of
appellees, Capital C Enterprises, Ltd., Capital C Management, L.L.C., and Jason B.
Cobb. (1) The trial court's order does not state whether judgment was rendered on
traditional or no-evidence grounds. See Tex. R. Civ. P. 166a(c), (i). In three issues,
appellant, Speedemissions, Inc., contends that the trial court erred (1) by rendering
summary judgment on claims by Speedemissions that Capital and Cobb breached
fiduciary duties owed to Speedemissions, tortiously interfered with its existing and
prospective business relationships, and misappropriated confidential information and
(2) by denying Speedemission's motion to compel discovery and for sanctions and
its motion to continue the summary-judgment proceeding. We affirm the summary
judgment in part and reverse the summary judgment in part, and we conclude that no
reversible error arose from the trial court's discretionary rulings. 

Facts and Procedural History


 This lawsuit concerns a business located on Veterans Memorial Drive in
Houston, Texas, and the real property on which the business is situated. Before the
events that led to this litigation, Gary Rose and Rose Enterprises (Rose) owned the
real property and leased it to Grant and Jean Smith (the Smiths), who ran a combined
carwash and vehicle-inspection station known as "Mr. Sticker" on the site for about
12 years. Cobb began working for Mr. Sticker in 1999.

 In summer 2005, as part of its purchase of the Mr. Sticker business from the
Smiths, Speedemissions acquired the business at the Veterans Memorial Drive
location. The purchase did not include the real property, which Rose still owned, and 
Speedemissions continued to pay the Smiths' obligations under the lease, which was
due to expire on April 30, 2006. Speedemissions chose to retain Cobb to manage that
location and soon promoted him to Program Manager. The Veterans Memorial Drive
location was one of Speedemissions' most profitable stores.

 By September 2005, Cobb's responsibilities had increased significantly. He
was managing five additional Speedemissions locations in Houston, including the
Veterans Memorial Drive location. Cobb noticed several other carwash locations in
Houston that had been recently refurbished and later discovered that the new owners
of those businesses had purchased their properties from Rose. Cobb located Rose and
contacted him sometime in October about purchasing the real property for the Mr.
Sticker business on Veterans Memorial Drive. 

 On December 21, 2005, Cobb and Rose entered into an earnest-money contract
for purchase of that property. Shortly thereafter, Cobb formed the Capital entities to
acquire the property, and on February 3, 2006, Capital C Enterprises, Ltd. became the
new owner of the Veterans Memorial Drive real property where the Mr. Sticker
business was located. 

 Cobb resigned from Speedemissions in late February or early March 2006. In
a letter dated March 27, 2006, Cobb notified Speedemissions that he had purchased
the property on Veterans Memorial Drive, and that Speedemissions had until April
30, 2006, the end of the lease term, to vacate. It is undisputed that Speedemissions
had not contacted Rose about renewing the lease before that date. (2) On taking
possession of the property after the lease expired, Cobb opened a new business named
"My Sticker" at the site. 

 Speedemissions filed suit on May 2, 2006 against Cobb and the Capital
entities, who promptly deposed Speedemissions' chief executive officer (CEO) Rich
Palontieri. A series of discovery disputes ensued, but Cobb was eventually deposed
on December 19, 2006. Cobb and the Capital entities then filed a joint motion for
traditional summary judgment and a joint motion for no-evidence summary judgment. 
While those motions were pending, Speedemissions filed a motion to compel
discovery, including responses to a number of questions certified during Cobb's
deposition, and also sought sanctions, including a stay of the proceedings, and
requested an oral hearing on the relief sought. On the same day, Speedemissions filed
a verified motion to continue the summary-judgment hearing. On February 5, 2007,
Speedemissions filed a combined response, subject to its pending motions, to Cobb's
and the Capital entities' motions for traditional and no-evidence motions for summary
judgment. 

 On February 12, 2007, the trial court conducted a hearing on Cobb's and the
Capital entities' motions for summary judgment and Speedemissions' pending
motions. A week later, the trial court signed orders rendering summary judgment in
favor of Cobb and the Capital entities and denying Speedemissions' pending motions;
on April 23, 2007, the trial court denied Speedemissions' motion for new trial.

Summary Judgment in Favor of Cobb and Capital Entities


 Speedemissions' first issue challenges the summary judgment rendered in favor
of Cobb and the Capital entities on Speedemissions' claims of breach of fiduciary
duty, tortious interference with business relationships, and misappropriation of trade
secrets. 

A. Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we must indulge every
reasonable inference in favor of the nonmovant, take all evidence favorable to the
nonmovant as true, and resolve any doubts in favor of the nonmovant. Id. When, as
here, a summary judgment does not specify the grounds on which it was granted, the
appealing party must demonstrate on appeal that no ground presented to the trial court
is sufficient to support the judgment. Rogers v. Ricane Enter., 772 S.W.2d 76, 79
(Tex. 1989); Tilotta v. Goodall, 752 S.W.2d 160, 161 (Tex. App.--Houston [1st
Dist.] 1988, writ denied). Accordingly, the appealing party must demonstrate that
each ground for summary judgment presented to the trial court is insufficient to
support the judgment. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
Conversely, we will affirm the judgment if any single ground advanced in the motion
is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004). 

 A party who relies on rule 166a(i) to seek summary judgment on no-evidence
grounds has essentially moved for a directed verdict in advance of trial. Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex. 2006); see Tex. R. Civ. P. 166a(i). 
When the movant files a qualifying rule 166a(i) motion, the burden shifts to the
nonmovant to defeat the motion by presenting evidence that raises an issue of
material fact regarding the elements challenged by the motion. Mack Trucks, Inc.,
206 S.W.3d at 582. Here, too, we review the evidence presented by the summary
judgment record in the light most favorable to the party against whom the summary
judgment was rendered, crediting evidence favorable to that party if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not. Id.
(citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Johnson v. Brewer
& Pritchard, P. C., 73 S.W.3d 193, 208 (Tex. 2002)).

C. No Evidence of Recoverable Damages--Tortious Interference &
Misappropriation of Trade Secrets


 Cobb's and the Capital entities' motion for no-evidence summary judgment
enumerated each of Speedemissions' claims--breach of fiduciary duty, tortious
interference with business relationships, and misappropriation of trade secrets--and
then listed the requisite elements of each of those claims. In moving for summary
under rule 166a(i), Cobb and the Capital entities argued that Speedemissions had to
demonstrate recoverable damages in order to prevail on each of these claims. 

 Speedemissions had to show actual damages to prevail on its claim that Cobb
and the Capital entities tortiously interfered with its existing and prospective business
relationships. See KTRK Television, Inc. v. Fowkes, 981 S.W.2d 779, 790 (Tex.
App.--Houston [1st Dist.] 1998, pet. denied), disapproved on other grounds, Turner
v. KTRK Television, Inc., 38 S.W.3d 103, 115-16 (Tex. 2000). Speedemissions also
had to show actual damages to prevail on its claim of misappropriation of trade
secrets. Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex.
App.--Austin 2004, pet. denied). Speedemission did not have to show actual
damages, however, in order to prevail on its breach-of-fiduciary-duty claim. See
Burrow v. Arce, 997 S.W.2d 229, 238-39 (Tex. 1999). (3) 

 Having demonstrated that actual damages were an essential element of
Speedemissions' tortious-interference and misappropriation claims, Cobb and the
Capital entities argued that no evidence existed that Speedemissions had incurred
actual damages and therefore could not prevail on those claims. See Abdelnour v.
Mid Nat'l Holdings, Inc., 190 S.W.3d 237, 240 (Tex. App.--Houston [1st Dist.]
2006, no pet.) (noting that defendant moving for no-evidence motion for summary
judgment need cite only lack of proof on one element of plaintiff's case to prevail). 
 1. Burden Shifted to Speedemissions 

 By specifying the elements as to which they claimed there was no evidence,
Cobb and the Capital entities satisfied their initial burden as movants under rule
166a(i) to contend that Spedemissions had no evidence of actual damages to support
its claims of tortious interference with business relationships and misappropriation
of trade secrets. See Tex. R. Civ. P. 166a(i); Johnson, 73 S.W.3d at 207; Cmty.
Initiatives, Inc. v. Chase Bank, 153 S.W.3d 270, 279-80 (Tex. App.--El Paso 2004,
no pet.).

 Accordingly, the burden shifted to Speedemissions, as nonmovant, to provide
"some evidence raising a genuine issue of material fact" concerning the challenged
damages elements of its claims against Cobb and the Capital entities to avoid
summary judgment in their favor. See Tex. R. Civ. P. 166a(i); Mack Trucks, Inc., 206
S.W.3d at 581. Once the burden shifted to Speedemissions, rule 166a(i) imposed a
duty on the trial court to grant no-evidence summary judgment in favor of Cobb and
the Capital entities on Speedemissions' claims of tortious interference with business
relationships and misappropriation of trade secrets, unless Speedemissions responded
by producing more than a scintilla of evidence that raised a genuine issue of material
fact on the challenged element of actual damages. See Tex. R. Civ. P. 166a(i); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); see also Doe v. Boys
Clubs, Inc., 907 S.W.2d 472, 477 (Tex. 1995) (holding that defendant who
demonstrates that plaintiff cannot prevail on single, required element of claim for
relief is entitled to summary judgment).

 If Speedemissions presented evidence that we may credit or, alternatively, not
disregard, Mack Trucks, Inc., 206 S.W.3d at 582, and thus raised a genuine issue of
material fact on the challenged damages element of its claims for tortious interference
with business relationships and misappropriation of trade secrets, then the trial court
erred by rendering no-evidence summary judgment, and we must reverse, see Rueda
v. Paschal, 178 S.W.3d 107, 109 (Tex. App.--Houston [1st Dist.] 2005, no pet.),
unless Cobb and the Capital established their right to summary judgment on an
alternative basis.

 2. Speedemission's Response 

 To defeat the Cobb's and the Capital entities' no-evidence challenges,
Speedemissions was not required to "marshal its proof" on damages, but to "point out
evidence that raises a fact issue" on the challenged damages element of its causes of
action. See Tex. R. Civ. P. 166a(i) (comment); Johnson, 73 S.W.3d at 207 (citing
same); Cmty. Initiatives, Inc., 153 S.W.3d at 280 (interpreting comment as requiring
nonmovant to point out some, but not all, evidence supporting challenged elements). 
Speedemissions' combined, single-document response addressed each of its claims
in sequence, but generally attempted to respond simultaneously to Cobb's and the
Capital entities' traditional and no-evidence motions. 

 a. Tortious Interference with Existing and Prospective Relationships

 Speedemissions claims that it had a relationship with Rose, the landlord, by
virtue of the Smiths' assignment of their lease for the property to Speedemissions as
part of its acquisition of Mr. Sticker. Speedemissions claims that Cobb interfered
with that alleged relationship. In this portion of its response, Speedemissions relied
on the portion of Dickerson's affidavit in which he stated,

 At all times relevant, Speedemissions had every indication that Rose
would renew or re-lease the Property to Speedemissions. These
indications came from the Smiths directly and purportedly from Rose as
relayed by the Smiths. [Therefore], Speedemissions did not believe that
it was necessary to begin renewal or re-lease negotiations significantly
prior to the end of the Rose lease. 


Dickerson further averred in his affidavit that Speedemissions would have willingly
purchased the property at the price paid by Cobb if Rose did not want to renew the
lease. "Thanks to Cobb," Speedemissions argued in its response, "Speedemissions
never had [that] chance. But for Cobb's interference in those relationships, assisted
by his sham entities, Speedemissions would have remained on the property and not
suffered damages." 

 Dickerson's sworn testimony shows that (1) Speedemissions derived its
expectation that its lease would continue from the Smiths--not from Rose--and that
(2) Speedemissions did not inquire of Rose about the lease after acquiring the leased
premises, despite having received the lease by assignment from the Smiths. But
Dickerson's testimony does not attempt to substantiate the value of the lease, for
purposes of Speedemissions' allegations of "suffered damages," or to quantify how
the loss of the Veterans Memorial Drive location affected Speedemissions, for
purposes of those "suffered damages." Parlontieri's deposition testimony that the
location was "profitable" and "probably" among the three most profitable of
Speedemissions' locations is similarly lacking in specificity. 

 Speedemissions disagrees that its proof of lost profits lacked specificity, on the
grounds that Texas law does not require "precise calculation" of damages. 
Speedemissions relies on Orchid Softwear, Inc. v. Prentice-Hall, Inc., 804 S.W.2d
208, 211 (Tex. App.--Austin 1991, writ denied). We distinguish Orchid Softwear
for several reasons. First, it resolved a traditional motion for summary judgment
based solely on rule 166a(b). Second, it predates Texas' adoption of rule 166a(i) and
no-evidence summary-judgment practice in 1997 and thus involves a different burden
of proof. Third, Orchid Softwear involved a new business enterprise whose
anticipated profits were necessarily difficult to ascertain. Id., 804 S.W.2d at 210-11.
This case, in contrast, involves an established business with readily obtainable profit
data, and Speedemissions has never claimed that the data was not obtainable. 

 More importantly, though recovery for lost profits does not require that the loss
be susceptible to exact calculation, the supreme court has mandated that the injured
party must do more than show that it suffered "some" lost profits. Helena Chem. Co.
v. Wilkins, 47 S.W.3d 486, 504 (Tex. 2001) (citing Tex. Instruments, Inc. v. Teletron
Energy Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994)). Specifically, the injured party
must prove the amount of the loss by competent evidence with reasonable certainty. 
Id. (citing Szczepanik v. First State Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); Holt
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex.1992)). This is a fact-intensive
determination, but opinions or lost-profit estimates must, "at a minimum," be based
on objective facts, figures, or data from which the lost-profits amount may be
ascertained. Id. (citing Szczepanik, 883 S.W.2d at 649; Heine, 835 S.W.2d at 84).

 Under the no-evidence standard, applied within the framework of settled law
regarding proof of lost profits, Speedemissions' summary-judgment
showings--Parlontieri's statement that the location was profitable and Dickerson's
expressed willingness to purchase "but for Cobb"--constitute mere speculation
concerning "suffered damages" without any foundation in objective facts, figures, or
data. See id. As a matter of law, these statements, taken either individually or
together, do not constitute legally sufficient evidence to prevent no-evidence summary
judgment on grounds of lack of damages. See Mack Trucks, Inc., 206 S.W.3d at 583;
City of Keller, 168 S.W.3d at 827. (4) 

 b. Misappropriation of Confidential Information

 Speedemissions's claim of misappropriation of confidential information is
premised on the contention that Cobb wrongfully misappropriated and disclosed
Speedemissions' confidential "strategic plan." Acknowledging its burden to
demonstrate "some harm" in order to avoid no-evidence summary judgment, see
Trilogy Software, Inc., 143 S.W.3d at 463, Speedemissions stated in its combined
response to Cobb's and the Capital entities' motions for summary judgment,

 The damage and injury suffered by Speedemissions from
misappropriation and disclosure of its confidential information by Cobb
and now his attorneys is clearly present, though not necessarily subject
to exact quantification at this time. For purposes of a no[-]evidence
summary judgment, Speedemissions only need demonstrate that it has
suffered some damage, it does not need to quantify that damage other
than to demonstrate that the damage is not nominal. There is no doubt
that Speedemissions['] confidential business data and strategic plan is
now publicly filed, by Defendants and their attorney, for all to see with
the Harris County District Clerk, despite a Rule 11 agreement having
been in place to prevent just that. 


 We hold that this response, too, presents only bare legal contentions and, thus,
no evidence concerning "damage and injury suffered" that, though "clearly present,"
is not necessarily subject to exact quantification" but "not nominal." Speedemissions
also misplaces reliance on Cobb's and the Capital entities' having filed the allegedly
confidential information with the trial court, in support of its motion for traditional
summary judgment and in alleged violation of a rule 11 agreement; Speedemissions
does not explain how that filing relates to its damages claim or resulted in calculable
damage to Speedemissions. (5) 

 Having failed to produce any evidence to substantiate its conclusory allegations
of damages arising from the alleged misappropriation of confidential information,
Speedemissions failed to defeat Cobb's and the Capital entities' no-evidence motion
regarding Speedemissions' claimed damages arising from that claim. 

 We therefore hold that Speedemissions did not meet its burden to defeat Cobb's
and the Capital entities' motion for no-evidence summary judgment contention that
no evidence existed to support the actual-damages elements of Speedemissions' claims
that Cobb and the Capital entities tortiously interfered with its relationship with Rose
and misappropriated its confidential information. Accordingly, summary judgment
in favor of Cobb and the Capital entities on those claims was proper. 

 We overrule Speedemissions' first issue as it pertains to its claims that Cobb
and the Capital entities tortiously interfered with Speedemissions' relationship with
Rose and misappropriated Speedemissions' confidential information. 

Breach of Fiduciary Duty


 The remaining portion of Speedemissions' first issue challenges Cobb's and the
Capital entities' entitlement to summary judgment on Speedemissions' claim of breach
of fiduciary duty. 

A. Cobb as Fiduciary

 A "fiduciary" is "any person who occupies a position of peculiar confidence
towards another." Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 185 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) (quoting Kinzbach Tool Co. v.
Corbett-Wallace Corp., 160 S.W.2d 509, 512 (1942)). The fiduciary relationship
demands "integrity and fidelity" and contemplates "fair dealing and good faith." Id.
In addressing the scope of a fiduciary duty in the context of the relationship between
attorneys employed by a law firm and the firm, the supreme court has stated, 

 The agreement to act on behalf of the principal causes the agent to be a
fiduciary, that is, a person having a duty, created by his undertaking, to
act primarily for the benefit of another in matters connected with his
undertaking. Among the agent's fiduciary duties to the principal is the
duty to account for profits arising out of the employment, the duty not to
act as, or on account of, an adverse party without the principal's consent,
the duty not to compete with the principal on his own account or for
another in matters relating to the subject matter of the agency, and the
duty to deal fairly with the principal in all transactions between them. 


Johnson, 73 S.W.3d at 200 (quoting RESTATEMENT (SECOND) OF AGENCY
§ 13, cmt. a (1958)). To the extent that Cobb agreed to "act on behalf of"
Speedemissions "in matters connected with" his employment, Cobb would become a
fiduciary with respect to Speedemissions. See id. In the employer-agency context of
agency relationships, courts take all aspects of the relationship into consideration
when determining the nature of fiduciary duties that flow between the parties. Nat'l
Plan Adm'rs, Inc. v. Nat'l Health Ins. Co., 235 S.W.3d 695, 700 (Tex. 2007).

 When a fiduciary relationship is alleged to be premised on agency principles
between an employee and his employer, as here, the employee "must act primarily for
the benefit of the employer in matters connected with his agency." Daniel, 190
S.W.3d at 185 (quoting Abetter Trucking Co. v. Arizpe, 113 S.W.3d 503, 510 (Tex.
App.--Houston [1st Dist.] 2003, no pet.)). An employee who serves as a fiduciary has
a duty to deal fairly with his principal in all transactions between them and to deal
openly and to disclose fully to his employer information that affects the employer's
business; he may not compete with his principal in order to benefit himself in matters
that relate to the subject matter of his employment. See id.; see also Kinzbach Tool
Co., 160 S.W.2d at 513 ("It is the duty of a fiduciary to deal openly, and to make full
disclosure to the party with whom he stands in [a fiduciary] relationship."). An
employee-agent who uses his position to gain a business opportunity belonging to the
employer commits an actionable wrong. Id.; Abetter Trucking Co., 113 S.W.3d at 510
(citing Bray v. Squires, 702 S.W.2d 266, 270 (Tex. App.--Houston [1st Dist.] 1985,
no writ)).

 We recognize that an at-will employee like Cobb may plan to compete with his
employer and take active steps to compete with his employer while still employed,
with no resulting duty to disclose those plans while he is still employed. Abetter
Trucking Co., 113 S.W.3d at 510. The employee may not, however, "act for his future
interests at the expense of his employer . . . by a course of conduct designed to hurt
the employer." Johnson, 73 S.W.3d at 202. 

 In moving affirmatively for summary judgment, Cobb argued that Cobb's
responsibilities did not, as a matter of law, extend to acquisition of property on
Speedemissions' behalf. Relying on the principle that the duties of a fiduciary extend
only to "matters relating to the subject matter of the agency," see id., Cobb argued that
Cobb's responsibilities as an employee did not encompass either leasing or acquisition
of property and that he served only as a manager of his assigned locations. 

 To support their contention, Cobb relied on deposition testimony by Parlontieri,
who stated that either he or Dickerson negotiated leases on behalf of Speedemissions
and that Cobb's job description did not include negotiating leases on any of
Speedemissions' locations. Cobb also argued that Cobb did not use his position to
locate Rose, whom he had never met in his role as manager, but located Rose through
internet research. Because Cobb's duties did not include negotiating leases, he argued
that he was free to purchase the location he was managing for Speedemissions and had
no duty to Speedemissions to disclose his intent to purchase the location. 

 As Parlontieri stated in his deposition, however, in addition to hiring, training,
operating, purchasing stickers, and ensuring compliance with all DPS rules and
regulations and that all deposits mere made, Cobb's duties included "look[ing] for new
sites for expansion" and "build[ing] the Grant Road/Jones Road store," and that Cobb
received additional "administrative support" to carry out those duties. Cobb also
defends his reasoning by relying on a portion of his deposition testimony, in which he
stated that any actions that were adverse to Speedemissions were done "on his own
time." Yet, Cobb frequently worked more than 50 hours a week and conceded that he
had no set hours, was on call 24 hours a day, seven days a week, and used his
company cell phone to negotiate the purchase with Rose. 

 The evidence presented by the summary-judgment record supports that Cobb
did not negotiate leases on behalf of Speedemissions as a matter of law. But this does
not compel a conclusion that Cobb was free to pursue his self-interest to compete with
Speedemissions by contacting Rose, its landlord, to propose purchasing one of
Speedemissions' most profitable properties without disclosing that intent to
Speedemissions. Given the duty of an employee to deal openly and to disclose fully
to his employer information that affects the employer's business, Daniel, 190 S.W.3d
at 185, and considering Cobb's managerial responsibilities, including the
responsibility to look out for new locations, the summary-judgment record raises a fact
issue regarding whether Cobb violated any fiduciary duties owed to Speedemissions. 
B. The Capital Entities as Fiduciaries

 The Capital entities moved for summary judgment on the grounds that their only
relationship with Speedemissions was as landlord and tenant, that they committed no
fraud, but, rather, acted within their rights, that no fiduciary relationship existed
between them as a matter of law, and that Speedemissions' attempt to impose a
constructive trust against them fails as a matter of law. We will affirm if any one of
these grounds merited judgment as a matter of law. See Joe, 145 S.W.3d at 157. In
response, Speedemissions argued that the Capital entities were "a sham" because their
"sole reason for existence" was "to do what [Cobb] cannot[,]" specifically, "to
perpetrate fraud, protect crime, evade existing legal duties, or justify wrongs." The
response thus presented the theory that the corporate identity of the Capital entities
should be disregarded as the alter ego of Cobb in order that a constructive trust be
imposed against them for the protection of Speedemissions. (6) See Procom Energy,
L.L.A. v. Roach, 16 S.W.3d 377, 381 (Tex. App.--Tyler 2000, pet. denied) (citing
Ginther v. Taub, 675 S.W.2d 724, 728 (Tex. 1984) (describing constructive trust as
"a legal fiction" and "creation of equity to prevent a wrongdoer from profiting from
his wrongful acts")).

 Texas law, including some statutory provisions, permits piercing the veil of a
corporation among other avenues by which shareholders or others may be held liable
for actions of the corporation. See Howell v. Hilton Hotels Corp., 84 S.W.3d 708, 714
(Tex. App.--Houston [1st Dist.] 2002, pet. denied) (statutory citation omitted); see
Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986). When "a corporation is
organized and operated as a mere tool or business conduit of another," the alter-ego
theory provides a basis on which to disregard the corporate fiction." Castleberry, 721
S.W.2d at 272. The theory applies when the corporation and individual are so unified
that separateness of the corporation ceases. Id. (citing First Nat'l Bank v. Gamble,
132 S.W.2d 100, 103 (Tex. 1939)). Alter ego requires a showing of the "total dealings
of the corporation and the individual, including the degree to which . . . corporate and
individual property have been kept separately, the amount of financial interest,
ownership and control the individual maintains over the corporation, and whether the
corporation has been used for personal purposes." Howell, 84 S.W.3d at 714 (quoting
Castleberry, 721 S.W.2d at 272). 

 To support its alter-ego allegations, Speedemissions focused on Cobb's having
negotiated and executed the earnest money contract for the Veteran's Memorial Drive
location in his personal capacity before the Capital entities were formed, but later
amended that contract to reflect ownership in Capital C Enterprises, Ltd. 
Speedemissions argues that this evidence shows that Cobb's purpose was to "erect a
fictional wall." But the conduct at issue pertains to Cobb and not the Capital entities;
nothing in the summary-judgment record addresses the totality of dealings between
Cobb and the Capital entities; there is but the fact of change of ownership from Cobb
to one of the Capital entities. Accordingly, the summary-judgment record reveal any
triable issues of fact regarding the alter-ego requirements stated in Howell. See id. 

 Though it is undisputed that Cobb crossed out his own name as purchaser on the
earnest-money contract and changed the purchaser's name to Capital C Enterprises,
Ltd., this, without more, does not give rise to triable issues of fact to support
Speedemissions' late-asserted claim that the Capital entities functioned as Cobb's
alter-ego and should, therefore, be subject to a constructive trust. See Ginther, 675
S.W.2d at 728. 

 For these reasons, we sustain the portion of Speedemissions' first issue that
challenges the summary judgment rendered in favor of Cobb on Speedemissions'
claim that he violated a fiduciary duty to Speedemissions. We overrule the portion of
Speedemissions' first issue that challenges the summary judgment rendered in favor
of the Capital entities for breach of fiduciary duties.

Denied Discovery and Continuance


 Speedemissions' second and third issues challenge the denial of its motion to
compel discovery responses and for sanctions and the denial of its motion to continue
the summary-judgment hearing so that those responses might be considered. 
Speedemissions has not demonstrated how these rulings by the trial court constitute
reversible error. See Tex. R. App. P. 44.1(a)(1)-(2). Rule 44.1(a) bars this Court from
reversing the judgment in a civil case unless "the trial court made an error or law" that
(1) probably caused rendition of an improper judgment or (2) probably prevented
Speedemissions from presenting its case to this Court. See id. 

 Speedemissions' motion to compel and for sanctions sought responses to
discovery requested of Cobb on the following matters: (1) the source and amount of
funds by Cobb, both to fund and to continue the Capital entities; (2) the source and
amount of financing for purchase of the Veterans Memorial Drive real property from
Rose; and (3) all documents referring to or concerning both sets of funds, including
the exhibit to the Capital entities limited partnership agreement that identifies capital
contributions. Speedemissions contends that the trial court's refusals to compel the
requested discovery and to continue the summary-judgment proceeding prejudiced
Speedemissions' ability to respond to Cobb's and the Capital entities' motions for
summary judgment. 

 Yet, while Speedemissions' motion to compel and for sanction and its motion
for continuance were pending, Cobb and the Capital entities had already filed a motion
for no-evidence summary judgment on which they ultimately prevailed. As explained
above, Speedemissions did not respond to the no-evidence motion with competent
summary-judgment evidence to create a fact issue regarding its claimed actual
damages--an element common to all of its claims--on which Speedemissions would
have the burden of proof at trial. Speedemissions has not shown that the requested
discovery that "Cobb and his entities had steadfastly and repeatedly refused" would
have produced any evidence on the issue of its claimed actual damages. Indeed,
Speedemissions confirms in its reply brief that the requested discovery is relevant to
its Speedemissions' request for punitive, rather than actual, damages, and that the
issue of punitive damages is "not necessarily germane to the summary judgment
proceedings." 

 Speedemissions' requested discovery had no bearing, therefore, on whether
Speedemissions could raise a fact issue on the actual damages elements of its claims,
the very issue on which the Cobb and the Capital entities had prevailed. Accordingly,
we cannot say that the trial court committed reversible error by refusing to compel
discovery requested on other elements of Speedemissions claims or by refusing to
continue the summary-judgment proceedings. Because Cobb and the Capital entities
were entitled to summary judgment under rule 166a(i), the trial court's ruling neither
caused rendition of an improper judgment nor prevented Speedemissions from
presenting its case to this Court. See Tex. R. App. P. 44.1(a)(1)-(2).

 We overrule Speedemissions' second and third issues. 

Conclusion


 We reverse the portion of the portion of the judgment of the trial court that
rendered summary judgment against Speedemissions on its claim that Cobb breached
his fiduciary duty to Speedemissions and remand that claim for trial. We affirm the
judgment of the trial court in all other respects. 





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. We refer to appellees jointly as "the Capital enterprises" and to Jason B. Cobb,
individually, as "Cobb."
2. Speedemissions has consistently maintained that there was no reason to investigate
renewing the lease, having relied on the Smiths' assurances that Rose would renew
the lease automatically.
3. Speedemissions could prevail on its claim for breach of a fiduciary duty either by
showing that it was damaged or that Cobb and the Capital entities had benefitted. See
Burrow v. Arce, 997 S.W.2d 229, 238-39 (Tex. 1999). Accordingly, lack of evidence
that Speedemissions incurred actual damages would not warrant rendition of a no-evidence summary judgment against Speedemissions. See id. (recognizing that
showing of actual damages not required to prevail on claim of breach of fiduciary
duty) (relying on Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509) (Tex.
1942), to reject lack of damage to plaintiff as negating recovery for breach of
fiduciary duty)). Imposition of a constructive trust, as Speedemissions sought here,
is, like fee forfeiture, one of several equitable remedies authorized for claim of breach
of fiduciary duty. See David R. Dow & Craig Smyser, 49 Texas Practice: Contract
Law § 2.32 (2005); see also Procom Energy, L.L.A. v. Roach, 16 S.W.3d 377, 381
(Tex. App.--Tyler 2000, pet. denied) (citing Ginther v. Taub, 675 S.W.2d 724, 728
(Tex. 1984) (describing constructive trust as "a legal fiction" and "creation of equity
to prevent a wrongdoer from profiting from his wrongful acts")); Meadows v.
Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974) (holding that plaintiff claiming breach
of fiduciary duty may impose constructive trust as remedy to redress wrong or prevent
unjust enrichment); Chien v. Chen, 759 S.W.2d 484, 494 n.6 (Tex. App.--Austin
1988, no writ) (recognizing equitable remedies, including constructive trust, as
remedy for breach of fiduciary duty); Hughes v. Houston Nw. Med. Ctr., Inc., 680
S.W.2d 838, 843 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.) (recognizing
constructive trust as remedy for breach of fiduciary duty that results in profit or unjust
enrichment to breaching party) (citing Omohundro v. Matthews, 341 S.W.2d 401, 410
(Tex. 1960)). 
4. Speedemissions argues in its reply brief that Cobb and the Capital entities waived any
deficiencies in the Dickerson affidavit by not objecting in the trial court, because their
objections relate to form, rather than substance. We disagree. See Clarendon Nat'l
Ins. Co. v. Thompson, 199 S.W.3d 482, 490 n.7 (Tex. App.--Houston [1st Dist.]
2006, no pet.) (stating that "conclusory statements in affidavits are errors of substance
and not form," and thus "not waived on appeal by failure to object in the trial court").
5. See Tex. R. Civ. P. 11. Speedemissions did not seek to enforce the agreement in the
trial court. See Exito Elec. Co., Ltd. v. Trejo, 142 S.W.3d 302, 306 (Tex. 2004)
(stating that filing rule 11 agreement is not request for enforcement).
6. Speedemissions did not assert the alter-ego theory as an affirmative claim in its
pleadings. Yet, Cobb and the Capital entities did not object on that basis when
Speedemissions asserted this theory in response to their motions for summary
judgment. Accordingly, we may treat the theory as if raised by the pleadings. See
Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991).