John R. CASTANO, Appellant,

v.

WELLS FARGO BANK, (Texas) N.A.,
Robert Cardenas Gonzales, and Isa-
bel Cornejo de Gonzales, Appellees.

No. 04–00–00838–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 27, 2002.

Craig A. Bulkeley, Law Offices of Craig S. Bulkeley, Black Mountain, NC, Ronald E. Mendoza, Les J. Strieber, III, Troy A. Glander, Davis, Cedillo & Mendoza, Inc., San Antonio, for Appellant.

S. Mark Murray, S. Mark Murray, Inc., Roy R. Barrera, Jr., Nicholas & Barrera, P.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by CATHERINE STONE, Justice.

We withdraw our opinion and judgment issued February 27, 2002, and substitute this later opinion and judgment. In the first week of October 2000, more than $203,000 was deposited into John Castano's Wells Fargo bank account via two separate wire transfers. The funds were transferred from a Mexican bank account. Castano admits he has no connection with the party sending the money or with the intended recipient of the funds. He also acknowledges that he has no reason to believe that either party intended to present him with a gift of these funds. He recognizes that the funds were deposited into his account in error when the sending party transposed a number. Nonetheless, Castano believes he is entitled to the amounts transferred into his account. The trial court refused to indulge Castano's belief and ordered him to surrender two cashier checks purchased with the transfer funds. We hold that Castano's claim to the funds cannot be supported by legal or equitable principles. Accordingly, we affirm the trial court's order.

### FACTUAL & PROCEDURAL BACKGROUND

Because Castano presents evidentiary challenges, a detailed review of the facts is required. On October 2, 2000, Isabel Gonzales asked her secretary to wire transfer $152,604 from Gonzales's bank account in Mexico to her bank account at Wells Fargo Bank in San Antonio. The wire transfer was completed via an automated computer transaction identifying the account number but not the account holder. Gonzales's secretary accidentally transposed two numbers in the Wells Fargo account. Because of the secretary's mistake, the funds were inadvertently deposited into John Castano's Wells Fargo account, instead of being deposited into Gonzales's account. There is no personal or business relationship of any kind between Gonzales and Castano; they are strangers.

Castano discovered on October 7, 2000, that his account contained approximately $150,000 more than he had calculated. Castano went to the bank three days later to investigate the discrepancy. Castano

had lost a computer disk containing sensitive personal information, including bank records, and he was concerned that his account was being used to launder money. In connection with his concern about possible criminal activity involving his account, Castano also contacted the FBI.

Castano met with Diane Anderson, a Wells Fargo Bank vice-president. He asked for an investigation and declared he would not leave the bank until the matter was cleared up. When Anderson inquired about the deposit with the wire transfer department, she was assured that the money had been deposited into the account number provided by the sender. Castano contends Anderson assured him the money was his. Anderson denied making such a statement. In any event, Castano obtained two cashier's checks—one for $152,604 (the amount erroneously deposited into his account) and the other for approximately $2,000 (the amount in his account prior to the wire transfer). He then opened a safety deposit box into which he put both checks. Anderson contends the two agreed Castano would do this until ownership of the funds could be established; Castano testified there was no such agreement, although he did acknowledge that he agreed to put the checks in the safety deposit box until he got the matter "cleared up."

On the day Castano met with Anderson, Gonzales wired a second transfer of $50,585.89 from her bank in Mexico to Wells Fargo, using the same incorrect account number. Two days later, on October 12, 2000, Anderson phoned Castano to inform him of this additional deposit into his account. At noon, Castano again went to the bank where he converted the new deposit into another cashier's check and deposited it into the safety deposit box. Later that day, Anderson contacted Dawn Crim at the bank's investigations department to launch an investigation. Meanwhile, Gonzales discovered that the money had not been deposited into her account at Wells Fargo and she initiated an investigation of her own through her bank in Mexico.

Crim was able to determine that day what had transpired. She immediately phoned Castano to tell him what had occurred and asked him to sign the cashier's checks over to the bank. Castano would not commit to a time to come to the bank. The following day, Crim sent him a letter demanding the return of the funds erroneously deposited into his account. Castano refused to comply.

Gonzales filed suit against Wells Fargo seeking injunctive relief. Wells Fargo filed a petition interpleading Castano. The trial court ordered Castano to surrender the two cashier's checks and ordered Wells Fargo to cancel the checks and deposit the proceeds into Gonzales's account. Castano now appeals this order, contending (1) the evidence was legally and factually insufficient to sustain the trial court's order, because there was no contract between Castano and the bank, and (2) the trial court erred in finding that Castano had no claim to the cashier's checks and that appellees presented any legal or factual basis establishing their right to those checks.

## STANDARD OF REVIEW

Findings of fact and conclusions of law were neither requested nor filed; this court must therefore presume that the trial court made all necessary findings to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). When, as in this case, a reporter's record is part of the appellate record, the appellant may challenge the legal and factual sufficiency of the implied findings the same as jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281

(Tex.1989); *United Indep. Sch. Dist. v. Gonzalez,* 911 S.W.2d 118, 122 (Tex.App.-San Antonio 1995), *writ denied per curiam,* 940 S.W.2d 593 (Tex.1996). Where the implied findings of fact are supported by the evidence, we must uphold the judgment on any legal theory applicable to the case. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987). In making this determination, we consider only the evidence most favorable to the implied fact findings and disregard all opposing or contradictory evidence. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

### CONSTRUCTIVE TRUST

 Mindful of the standard of review, we believe the trial court's order is sustainable on a theory of constructive trust. Constructive trusts are remedial in character and have the broad function of redressing wrong or unjust enrichment in keeping with the basic principles of equity and justice. *See Ginther v. Taub,* 675 S.W.2d 724, 728 (Tex.1984). Thus, the holder of legal title to property is deemed to be a trustee of that property for the benefit of another who is entitled to it because the retention of the property would result in unjust enrichment. A constructive trust can arise when there is a fiduciary relationship, a promise, a transfer of property with reliance on the promise, and unjust enrichment. *See id.* at 725–27. As stated by the Texas supreme court:

> In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same ... The principle is applied wherever it is necessary for the obtaining of complete justice....

*Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256, 262–63 (1951).

 In the instant case, Castano obtained cashier checks in the exact amount of the wire transfers. There is evidence that he agreed to convert the transfer funds into cashier checks and deposit the checks into a safety deposit box until he "got it cleared up." Wells Fargo's interpleader petition alleged these basic facts. Thus the pleadings and the evidence support an implied finding that Castano agreed to hold the funds in trust until the matter was "cleared up"—that is, until the rightful owner of the funds was determined. Castano's later claim that the funds somehow became his with no encumbrances once he converted the funds into cashier's checks is without support in law. Accordingly, we overrule issues one and two.

We affirm the trial court's judgment. Our ruling on Wells Fargo's motion for sanctions will be forthcoming in a separate order