MEMORANDUM OPINION


No. 04-02-00870-CV


James Bradley THOMASON

d/b/a Contract Products Services Network,

Appellant


v.


COLLINS & AIKMAN FLOORCOVERINGS, INC.,

Appellee


From the 285th Judicial District Court, Bexar County, Texas 

Trial Court No. 1998-CI-13666

Honorable Patrick J. Boone, Judge Presiding


Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: March 31, 2004


AFFIRMED IN PART, REVERSED AND REMANDED IN PART



 The underlying lawsuit was brought by appellant, James Bradley Thomason d/b/a Contract
Products Services Network, to recover commissions he alleges are owed to him by appellee, Collins
& Aikman Floorcoverings, Inc. ("C&A"). C&A moved for summary judgment on several grounds,
including that Thomason lacked standing to pursue his claims. The trial court rendered summary
judgment in C&A's favor on the ground that Thomason was not the real party in interest to prosecute
his claims against C&A and, thus, lacked standing to maintain his causes of action. We affirm in part
and reverse and remand in part.

BACKGROUND

 Thomason is a carpet manufacturer's representative. C&A manufactures and distributes
carpets. In addition to its full-time exclusive sales employees, C&A also distributes carpets through
non-exclusive sales agents (such as Thomason), who are paid commissions in the form of rebates.
The State of Texas occasionally issues contracts under which government agencies purchase carpet
at pre-negotiated prices, and carpet dealers bid for a position on the contract. The State awarded the
first of these contracts in 1993 to a variety of vendors. At that time, Thomason worked for Interface
Flooring Systems through which he developed a relationship with various architects and state
officials.

 In 1994, Thomason left Interface Flooring Systems and approached David Gant, a C&A
regional manager. Thomason told Gant he was associated with Green Carpets, a carpet dealer that
had won the contract in six of the seven geographical zones identified in the 1993 contract.
According to Thomason, if C&A's products became recognized as meeting the contract's
specifications, Green Carpets would then sell C&A products to state agencies. Gant and Thomason
agreed C&A would compensate Thomason through rebate commissions earned from the sale of C&A
carpets. Under the agreement, C&A would give Thomason the volume price for its products, and
Thomason would market the products to buyers at an increased price and submit any purchase orders
to C&A. C&A then would sell the product directly to the buyer, collect the purchase price, and remit
to Thomason the difference between the volume price and the purchase price. Thomason was
successful in obtaining recognition of C&A product specifications in the 1993 contract, and all sales
of C&A products under the contract went through him. In 1996, the State of Texas re-bid its
contract, and Thomason worked to ensure that C&A's product specifications were included in the
contract. When the contract issued, C&A became one of the product suppliers to State agencies.
Again, Thomason had an agreement with C&A as to the volume prices it would charge for carpets
sold under the 1996 contract. 

 Also in 1996, Thomason began discussions with Steve Whitener, who worked for Green
Carpets. Whitener agreed to leave Green Carpets and form a partnership with Thomason to be called
Gomez Floor Covering ("Gomez"). Although there is a dispute over whether a partnership between
Thomason and Whitener ever arose, Gomez was eventually formed. Thomason agreed to contribute
to Gomez his profit margins on the carpet lines he represented under the 1996 contract in exchange
for fifty percent of the profit Gomez received under the 1996 contract. In September 1996, Gomez
became a listed dealer on the 1996 contract. Shortly thereafter, the relationship between Thomason
and Whitener disintegrated.

 In November 1996, Whitener filed suit, requesting a declaratory judgment that Thomason had
no interest in Gomez or in any profits earned from the 1996 contract. A jury found in favor of
Thomason and this court affirmed the judgment. See Whitener v. Contract Prod. Serv. Network, No.
04-98-00605-CV, 1999 WL 1020940 (Tex. App.--San Antonio Nov. 10, 1999, pet. denied) (not
designated for publication). In February 2002, Thomason settled his claims against Gomez.

 At about the time the deal between Thomason and Whitener fell apart, C&A began to deal
directly with Gomez. At this time, C&A raised its volume price, and in doing so, according to
Thomason, earned an additional $1.8 million in profits. When C&A refused to pay Thomason
commissions based on these additional profits, he sued C&A alleging breach of contract, breach of
agency relationship, breach of fiduciary duty and/or duty of good faith and fair dealing, unjust
enrichment, constructive trust, and misappropriation. C&A filed a motion for summary judgment on
Thomason's breach of agency claim, breach of fiduciary duty and/or duty of good faith and fair
dealing claim, constructive trust claim, and misappropriation claim. After Thomason filed his Tenth
Amended Petition, C&A filed an Amended and Restated Motion for Summary Judgment,
incorporating by reference all arguments presented in its original motion. In its amended motion,
C&A stated the parties had reached an agreement allowing C&A to amend its original motion for
summary judgment "to include [Thomason's] claims against C&A for breach of contract and unjust
enrichment . . . . and allow the trial court to rule upon all pending claims . . . including the causes of
action for breach of contract and unjust enrichment, which had not been addressed in C&A's
[original] motion [for summary judgment]." The amended motion was based solely on C&A's
argument that Thomason lacked standing to pursue any of his claims against it. Based on C&A's
standing argument, the trial court rendered judgment in C&A's favor, dismissing all of Thomason's
claims against C&A. This appeal by Thomason ensued.

STANDING

 In its amended motion for summary judgment, C&A asserted Thomason was not the proper
party to assert claims against it. Instead, according to C&A, "the Gomez partnership [was] the only
real party in interest" because (1) Gomez was the only entity with an agreement with C&A; (2)
Gomez was the entity that received the 1996 contract; and (3) Thomason contributed all his
commissions into Gomez, therefore, he has no individual justiciable interest in the subject matter of
the litigation. (1)

 Generally, an individual shareholder or partner may not sue for injuries done to the
corporation or partnership. See Murphy v. Campbell, 964 S.W.2d 265, 268 (Tex. 1997)
(corporation); Clary Corp. v. Smith, 949 S.W.2d 452, 462-63 (Tex. App.--Fort Worth 1997, writ
denied) (partnership). C&A contends Thomason's "judicial admissions" made during the previous
appeal establish that the Gomez partnership is the only real party in interest to this litigation. We
disagree. At most, in its summary judgment, C&A established only that Thomason had an agreement
with Gomez under which he would receive fifty percent of its profits and that Thomason believed he
and Gomez had "a deal." Accordingly, C&A did not conclusively establish the existence of a
partnership between Thomason and Whitener (2) or that Gomez was a partnership vested with any claim
to Thomason's commissions. For these reasons, C&A did not establish, as a matter of law, its
entitlement to summary judgment based on its argument that Thomason lacked standing. (3)

C&A'S OTHER GROUNDS FOR SUMMARY JUDGMENT

 Alternatively, C&A asserts it is entitled to summary judgment on grounds raised in its motion
for summary judgment but not addressed by the trial court. See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 625-26 (Tex. 1996) (this court may consider grounds on which the trial court did
not rule). In its motion for summary judgment, C&A asserted there was no evidence it and
Thomason had a relationship sufficient to create duties underlying Thomason's claims for breach of
agency relationship, breach of fiduciary duty and duty of good faith and fair dealing, and
misappropriation. (4)

Breach of Fiduciary Duty and Breach of Duty of Good Faith and Fair Dealing

 Thomason alleged C&A breached its duties "due to the agency relationship and/or the
confidential relationship based on Thomason's long-standing pre-existing relationship of trust and
confidence with C&A." In its motion for summary judgment, C&A asserted there was no evidence
of a relationship between Thomason and C&A that would give rise to a fiduciary relationship and
there was no evidence of a breach of any fiduciary duty.

 The acts of a party may breach duties in tort or contract, and it is the nature of the injury that
often determines which duty or duties are breached. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d
617, 618 (Tex. 1986). "When the injury is only the economic loss to the subject of a contract itself
the action sounds in contract alone." Id. The duties Thomason alleges that C&A breached are
based on C&A's agreement to pay him commissions. Thus, his claim for the economic loss suffered
as a result of C&A's alleged failure to honor its agreement with him are not tort claims independent
of any agreement between the parties. See Southwestern Bell Tel. v. DeLanney, 809 S.W.2d 493,
495 (Tex. 1991). Because Thomason's claims for breach of fiduciary duty and for breach of a duty
of good faith and fair dealing are based on C&A's alleged failure to pay him commissions, summary
judgment on these claims was proper.

Breach of Agency Relationship

 In his petition, Thomason alleged he acted as an agent for C&A; therefore, C&A owed him
a duty to inform him of any risk of pecuniary loss in his dealings with C&A. In its motion for
summary judgment, C&A argued Thomason's breach of agency relationship fails because there was
no evidence that Thomason was C&A's agent and no evidence of control by one party over another. 

 An agent is one who is authorized by another to transact business or manage some affair for
him. Welch v. Coca-Cola Enters., Inc., 36 S.W.3d 532, 539 (Tex. App.--Tyler 2000, pet.
withdrawn). The agency relationship does not depend upon express appointment or assent by the
principal; instead, it may be implied from the conduct of the parties under the circumstances. Id. at
540; Carr v. Hunt, 651 S.W.2d 875, 879 (Tex. App.--Dallas 1983, writ ref'd n.r.e.). An agency
may be implied from acquiescence, which exists when there is conduct from which assent may be
reasonably inferred. Welch, 36 S.W.3d at 540; see also Carr, 651 S.W.2d at 879. The existence
of an agency relationship may be established by circumstantial evidence based upon proof of all the
facts and circumstances that shows the relationship of the parties and throws light upon the character
of such relations. Welch, 36 S.W.3d at 540.

 To prove agency, the evidence must establish that the principal has the right to assign the
agent's task and to control the means and details of the process by the which the agent will
accomplish that task. Schultz v. Rural/Metro Corp., 956 S.W.2d 757, 760 (Tex. App.--Houston
[14th Dist.] 1997, no pet.). Here, the summary judgment evidence at least raises a fact issue as to
an implied agency. C&A's vice president for sales stated the company "would have referred to
[Thomason], in maybe laymen's terms, as an agent. He was not a company employee." C&A does
not dispute that it controlled the volume prices and specifications of the products Thomason
marketed on its behalf. Accordingly, to the extent Thomason's claim for breach of agency
relationship is based on allegations separate from his allegation that C&A did not pay him
commissions, C&A did not establish, as a matter of law, its entitlement to summary judgment on
Thomason's breach of agency claim.

Misappropriation

 Thomason alleged C&A misappropriated the "fruits of [his] knowledge, work and efforts."
In its motion for summary judgment, C&A asserted Thomason did not identify any work product
that was actually misappropriated. We agree. An element of a claim for misappropriation is the
creation of a work product. (5) U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc., 865
S.W.2d 214, 218 (Tex. App.--Waco 1993, writ denied). Thomason asserts the evidence of his
work product is detailed in his affidavit. However, Thomason's affidavit provides no details about
his "work product" except an explanation that he worked with a State of Texas representative
regarding the specifications the State placed in its contract. According to Thomason, the State-specified requirements "would necessarily point to a [C&A] product." Thomason said he would
argue for particular carpet specifications without denominating a brand, and by securing the State's
approval of those specifications, the brand order could then only be filled by a C&A product.
Although there is no doubt that Thomason's time, labor, and skill went into securing C&A's
position on the 1996 contract, these efforts did not result in a "work product" subject to
appropriation by a competitor. Accordingly, summary judgment on Thomason's misappropriation
claim was proper. 

Constructive Trust and Unjust Enrichment

 In his Ninth and Tenth Amended Petitions, Thomason "sue[d] C&A in equity for money had
and received and/or in quantum meruit," asserting C&A was unjustly enriched by accepting the
benefits of his work. He also alleged he was entitled to a constructive trust for the difference
between the prices C&A quoted to him and the prices C&A actually charged Gomez. 

 In its original motion for summary judgment, C&A argued Thomason was not entitled to a
constructive trust because he did not allege any fraud on its part and because there exists no
confidential relationship between the parties. In its amended motion for summary judgment, C&A
argued it was entitled to judgment on all of Thomason's claims on the grounds that Thomason
lacked standing. However, in neither motion did C&A challenge Thomason's entitlement to a
constructive trust based on his claims for unjust enrichment or quantum meruit.

 Constructive trusts are remedial in character and have the broad function of redressing wrong
or unjust enrichment in keeping with the basic principles of equity and justice. See Ginther v. Taub,
675 S.W.2d 724, 728 (Tex. 1984). A constructive trust can arise when there is a fiduciary
relationship, a promise, a transfer of property with reliance on the promise, or unjust enrichment.
Castano v. Wells Fargo Bank, N.A., 82 S.W.3d 40, 43 (Tex. App.--San Antonio 2002, no pet.).
 Therefore, if Thomason established his claim for either unjust enrichment or quantum meruit, he
may have been entitled to a constructive trust for the difference between the prices C&A quoted to
him and the prices C&A actually charged Gomez. Because we conclude C&A was not entitled to
summary judgment based on its standing argument, and because C&A did not otherwise negate the
elements of Thomason's claims for unjust enrichment or quantum meruit, C&A is not entitled to
summary judgment on these claims or on Thomason's claim for a constructive trust.

CONCLUSION

 We affirm the trial court's judgment in favor of C&A on Thomason's breach of fiduciary
duty and/or good faith and fair dealing claim and his misappropriation claim. We reverse the trial
court's judgment in all other respects and remand the cause for further proceedings.


 Sandee Bryan Marion, Justice
1. On appeal, C&A asserts a different argument to support its assertion that Thomason lacks standing. C&A
contends Thomason assigned his commissions to Gomez; therefore, only Gomez may assert any rights to those
commissions. Texas Rule of Civil Procedure 166a(c) requires that a summary judgment movant state the "specific
grounds therefor." Tex. R. Civ. P. 166a(c). In its motion, C&A merely states that Thomason testified he "contributed
all of his profits, commissions, and efforts into the Gomez partnership and that he would not have sued C&A if he had
received half of the Gomez partnership profits." This statement is not sufficient to assert that an assignment occurred
nor is it sufficient to establish the elements of an assignment. Accordingly, we do not address C&A's assignment
argument because it was not raised before the trial court.
2. This court's opinion in Whitener v. Contract Products Services Network did not address whether Whitner
and Thomason formed a partnership or joint enterprise. See Whitener, 1999 WL 1020940, at *5 (Gomez failed to
preserve this issue for appeal).
3. On appeal, C&A also asserts that (1) its agreement with Thomason to pay him commissions deprives
Thomason of any standing to seek unjust enrichment damages; (2) Thomason's decision to assign his contractual rights
to Gomez terminated any agency relationship between Thomason and C&A; and (3) Thomason's decision to assign
his contractual rights to Gomez deprived him of standing to sue for misappropriation. To the extent our disposition
of C&A's standing argument does not otherwise dispose of these assertions, we do not address them here because C&A
did not raise these arguments before the trial court.
4. On appeal, C&A also asserts (1) Thomason cannot enforce the terms of any contract he had with C&A
because he assigned his commissions to Gomez; (2) there is no evidence that C&A and Thomason had a relationship
sufficient to give rise to a breach of contract claim; and (3) alternatively, the existence of any contract between
Thomason and C&A bars Thomason's quantum meruit and unjust enrichment claims. Again, to the extent our
disposition of C&A's standing argument does not otherwise dispose of these assertions, we do not address them here
because C&A did not raise these arguments before the trial court.
5. The elements are (1) the creation by plaintiff of a product through extensive time, labor, skill and money;
(2) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive
advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the
product; and (3) commercial damage to plaintiff. U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc., 865
S.W.2d 214, 218 (Tex. App.--Waco 1993, writ denied)(noting element of misappropriation of trade secret is use of
plaintiff's product in competition with plaintiff).