*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00146-CV

Samuel C. **PERKINS**,
Appellant

v.

Edward **FRANCIS** Jr., et al.,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-18838
Honorable Solomon Casseb, III, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed: November 25, 2009

AFFIRMED

Samuel C. Perkins appeals from a judgment awarding title and possession of two tracts of

land to his cousins, Edward Francis Jr., Alfred Francis, Georgia Francis, and Denise Francis ("the

Francises").  After a nonjury trial, the trial court found the Francises established their ownership of

the land based on adverse possession.  On appeal, the only issue is whether the evidence supports

the trial court's implied finding of notice of repudiation of cotenancy as to each tract.  Because we

conclude there was evidence from which the trial court could have inferred notice of repudiation of cotenancy as to each tract, we affirm the trial court's judgment.

## BACKGROUND

The two tracts of land at the center of this controversy are located in Bexar County, Texas. The first tract of land ("tract one") is approximately five acres and is located at 15112 Lupon Road, St. Hedwig, Texas. The second tract of land ("tract two") is approximately .91 acres of land and is located at 13560 Adkins-St. Hedwig Road, St. Hedwig, Texas.

The two tracts of land have been in the Fields-Francis family for decades. George and Jennie Fields purchased tract one in 1919. One of their children, Anna Fields, married Israel Francis. Anna and Israel had ten children, including Alma Francis Perkins and Edward Francis Sr.

The parties to this appeal are all members of the Fields-Francis family. Perkins, the appellant, is the son of Alma Francis Perkins. The Francises, the appellees, are the children and grandchild of Edward Francis Sr.

In 1952, after Anna died and Israel vacated tract one, their son, Edward Sr., moved onto tract one. Except for a period of several years, Edward Sr. lived on tract one until his death in 1993. Edward Sr.'s wife remained on tract one until her death in 2003. Edward Sr. placed a fence around the property. The fence, which was visible from the street, had a gate. The gate was always locked when Edward Sr. and his immediate family left the property. None of Edward Sr.'s siblings or other extended family members ever had a key to the gate.

Edward Sr. first claimed ownership to tract two in 1986. Initially, Edward Sr. extended an offer to his son, Alfred, to come live on tract two. Tract two had a mobile home on it that was

owned by Edward Sr. According to Alfred, Edward Sr. told him he had recently become the owner of tract two. When Alfred declined Edward Sr.'s offer to come live on the property, Edward Sr. rented tract two to a tenant. Edward Sr.'s tenant remained on tract two from 1986 to 1993. Edward Sr.'s wife kept a rent receipt book, documenting all of the rental payments received from the tenant. Edward Sr. never shared any of the rent received from tract two with any of his siblings or other extended family members. In 1993, Edward Sr.'s daughter, Georgia, came to live on tract two with Edward Sr.'s permission. At the time of trial, Georgia continued living on tract two.

In July 2006, Perkins began asserting a claim to tract one. Perkins placed horses and dogs on the land, put in fence posts, built temporary corral-like fencing, scattered debris on the property, and started using the water. The Francises repeatedly called the sheriff to put a stop to Perkins's activities on tract one. When Perkins was told to remove his animals and other items from tract one, Perkins refused, claiming he was a part owner of the land and was acting well within his rights. Shortly thereafter, Perkins began asserting a claim to tract two, placing dogs and horses on the land. In response to Perkins's actions, the Francises filed the underlying suit for trespass to try title. In their petition, the Francises alleged they had satisfied the requirements of both the ten-year and twenty-five year adverse possession statutes.

After hearing the evidence presented at trial, the trial court granted judgment in favor of the Francises and enjoined Perkins from entering or remaining on the tracts. No findings of fact or conclusions of law were requested or filed. This appeal ensued.

## STANDARD OF REVIEW

In a nonjury trial, when no findings of fact or conclusions of law are requested or filed, we imply all necessary findings in support of the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Castano v. Wells Fargo Bank, N.A.*, 82 S.W.3d 40, 42 (Tex. App.—San Antonio 2002, no pet.). When the implied findings are supported by the evidence, we must uphold the judgment on any legal theory applicable to the case. *Castano*, 82 S.W.3d at 43 (citing *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987)).

## ADVERSE POSSESSION

The Civil Practice and Remedies Code defines adverse possession as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person." TEX. CIV. PRAC. & REM. C. ANN. § 16.021 (Vernon 2002). Title acquired by adverse possession is as full and absolute as any other perfected title. *See id*. at § 16.030(a) ("If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims."). The party seeking to establish title to land by adverse possession has the burden to prove every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990) (op. on reh'g). To support a claim for adverse possession, a claimant must prove: (1) actual possession of the disputed property; (2) under a claim of right; (3) that was adverse or hostile to the claim of another person and that it was consistently and continuously so for the duration of the statutory period. *Villarreal v. Chesapeake Zapata, L.P.*, No. 04-08-00171-CV, 2009

WL 1956387, at *3 (Tex. App.—San Antonio 2009, pet. filed); *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 817 (Tex. App.—Texarkana 2004, pet. denied).

### NOTICE OF REPUDIATION OF THE COTENANCY

Where cotenancy is involved, the burden of proof imposed on the adverse possession claimant is more onerous. *Hernandez v. Hernandez*, 611 S.W.2d 732, 734 (Tex.Civ. App.—San Antonio 1981, no writ). This is so because "[i]t is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants." *Todd v. Bruner*, 365 S.W.2d 155, 159 (Tex. 1963).

A cotenant may claim adversely to another cotenant only if the cotenant has repudiated the cotenancy and notice of the repudiation has been brought home to the other cotenants. *Hernandez*, 611 S.W.2d at 734. Notice of the repudiation must be clear, unequivocal, and unmistakable. *Todd*, 365 S.W.2d at 160. But actual notice of the repudiation is not required; notice of the repudiation may be constructive or inferred. *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 341 (Tex. App.—San Antonio 2006, pet. denied); *Thedford v. Union Oil Co. of California*, 3 S.W.3d 609, 614 (Tex. App.—1999 Dallas, pet. denied).

In *Tex-Wis Co. v. Johnson*, the Texas Supreme Court held "the jury may infer that notice of repudiation has been brought home to the titleholder where there has been (1) long-continued possession under claim of ownership and (2) nonassertion of claim by the titleholder." 534 S.W.2d 895, 901 (Tex. 1976); *see also Villarreal,* 2009 WL 1956387, at *6 (acknowledging that a jury may be permitted to infer that constructive notice of repudiation was brought home to the cotenants, but appellate court could not draw such an inference when reviewing the granting of a summary

judgment). Repudiation is often a fact question; however, when the pertinent facts are undisputed, repudiation may be established as a matter of law. *King Ranch, Inc. v. Chapman*,118 S.W.3d 742, 756 (Tex. 2003).

### ISSUE PRESENTED

The issue presented in this appeal is a narrow one. Perkins does not argue the Francises failed to meet their burden to prove the general adverse possession elements, *i.e.*, (1) actual possession of the disputed property; (2) under a claim of right; (3) that was adverse or hostile to the claim of another person and that it was consistently and continuously so for the duration of the statutory period. Perkins's only argument is the Francises did not establish their title by adverse possession because they "fail[ed] to show the acts relied on to repudiate all of the out of possession cotenant[s'] titles." In making his argument, Perkins asserts "Edward Francis Sr.'s intention[] was not to claim against his out of possession cotenants . . . as Edward Francis Sr. represented the Fields-Francis interests and being the caretaker." Thus, Perkins essentially argues the trial court erred in awarding title and possession of tract one and tract two to the Francises because they failed to present evidence from which the trial court could have inferred notice of repudiation of a cotenancy as to each tract.

### LONG-CONTINUED POSSESSION UNDER A CLAIM OF OWNERSHIP

#### 1. Tract One

As to tract one, the Francises contend the evidence showed that any cotenancy that may have existed at Israel's death[1] was repudiated by the long-continued possession of Edward Sr., Edward Sr.'s wife, and Edward Jr., under a claim of ownership, and the other alleged cotenants' failure to assert a claim of ownership to the land.

The evidence showed Edward Sr. and his immediate family had possession of tract one for about five decades. Edward Sr. started living on tract one in 1952 and, except for a period in the late 1950's and the early 1960's, lived on tract one until his death in 1999. After Edward Sr.'s death, his widow, Frances Francis, continued to live on tract one and to claim ownership of it until her death in 2003. Thereafter, Edward Jr. lived on tract one and claimed ownership of it until the time of trial in 2009.

From 1948 to 1966, no taxes were paid on tract one. The various taxing entities, including the State of Texas, Bexar County, and the East Central School District, filed delinquent tax suits and foreclosed tax liens on tract one. In the 1960's, Edward Sr. went to each of his siblings and asked them if they were interested in redeeming tract one from foreclosure. In response, the siblings declined to assist Edward Sr. in paying the delinquent taxes. The siblings informed Edward Sr. that they had no desire to redeem tract one and wanted nothing to do with the land. Thereafter, Edward Sr. paid the delinquent taxes and obtained certificates of redemption on tract one.

We recognize that possession and payment of taxes by a cotenant are generally not sufficient to notify cotenants of the repudiation of common title. *See Todd*, 365 S.W.2d at 160. However, the

---

[1] After Anna's death, members of the Fields family executed a deed granting tract one to Israel. Israel died in 1973.

evidence here shows more than mere possession and payment of taxes by Edward Sr.  After paying all the back taxes on tract one, Edward Sr. placed a fence around tract one, put a lock on the gate, continued to pay the taxes on tract one, moved several mobile homes onto the property, and lived on the property until his death in 1999.  Several witnesses testified that no one—not Perkins or any other extended family members named as defendants in the underlying suit—ever asked for or was given a key to the gate on tract one.  Moreover, several witnesses testified that extended family members did not go onto tract one without Edward Sr.'s permission.

Additionally, Edward Sr.'s daughter, Georgia, who was forty-two years old at the time of trial, testified that she grew up on tract one.  For as long as Georgia could remember, no one other than her immediate family ever lived on tract one.  Georgia testified that she and her immediate family grew up knowing that they were the owners of tract one.  Georgia also stated two of her aunts had acknowledged that Edward Sr. was the exclusive owner of tract one.

### 2. Tract Two

As to tract two, the Francises contend there was no evidence of any cotenancy, and therefore, they were not required to establish notice of repudiation of any cotenancy.  Alternatively, the Francises contend that even if there had been evidence of a cotenancy as to tract two, the trial court could have inferred notice of repudiation of the cotenancy on the record presented.  Again, the Francises point to Edward Sr.'s and Georgia's long-continued possession of tract two under claim of ownership and the other alleged cotenants' failure to assert a claim of ownership to the land.

Even if we assume the existence of a cotenancy as to tract two, we are of the opinion that sufficient evidence was presented for the trial court to infer notice of repudiation of any common

title. The evidence showed Edward Sr. and his daughter, Georgia, had continued possession of tract two under a claim of ownership for more than two decades. Alfred testified his father, Edward Sr., became the owner of tract two in 1986 when the extended family divided up a larger tract of land. According to Alfred, shortly after Edward Sr. became the owner of tract two he gave Alfred permission to come live on tract two. When Alfred declined the invitation, Edward Sr. rented tract two to a tenant from 1986 to 1993. Edward Sr.'s wife maintained a receipt book documenting all of the rents received from the tenant on tract two. The receipt book was admitted into evidence.

Additionally, Georgia testified Edward Sr. kept all the rent payments he received from the tenant on tract two and never shared the rent payments with extended family members. After the tenant moved off of tract two in 1993, Edward Sr. invited Georgia to live on tract two and she accepted. At the time of trial, in 2009, Georgia continued to live on tract two. According to the record before us, no one other than the tenant and Georgia ever lived on tract two during the relevant time period.

### NONASSERTION OF A CLAIM OF OWNERSHIP BY OTHER COTENANTS

The evidence showed that the first time anyone other than Edward Sr. and his immediate family ever attempted to claim ownership of the tracts was in 2006 when Perkins placed his horses and dogs on the tracts. Several witnesses testified that none of Edward Sr.'s siblings or their children ever acted as if they owned either of the tracts while Edward Sr. or his wife was alive. Alfred testified that many years ago extended family members informed Edward Sr. that they wanted nothing to do with the two tracts of land. Georgia testified that no one ever challenged her father's ownership of tract one or tract two. And, according to Georgia, no one outside of her immediate

family, not even Perkins's mother, Alma, ever stated she had an ownership interest in tract one or tract two.[2] Thus, the evidence showed that no one other than Edward Sr. and his immediate family made any claim of ownership as to tract one and tract two during the relevant time period.

## CONCLUSION

Having reviewed the record, we conclude that evidence was presented of (1) long-continued possession under a claim of ownership and (2) nonassertion of a claim of ownership by other cotenants. From the evidence presented, the trial court, as the factfinder in this case, could have inferred notice of repudiation of any cotenancy. Because the trial court's judgment is supported by the evidence, Perkins's issue must be overruled. The judgment of the trial court is affirmed.

Karen Angelini, Justice

---

[2] Perkins states in his brief that his mother, Alma, executed a quitclaim deed granting him any interest she had in tract one. The quitclaim deed was not admitted into evidence at trial and is not part of the record before us.