# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00593-CV

**Appellant, Danny Davis // Cross-Appellant, Sysco Food Services of Austin, L.P.**

**v.**

**Appellee, Sysco Food Services of Austin, L.P. // Cross-Appellee, Danny Davis**

---

**FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY**
**NO. C-1-CV-03-271634, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Sysco Food Services of Austin, L.P. provided certain equipment under a lease agreement to a restaurant that subsequently ceased operations with money due and owing under the equipment lease. El Dorado Bar & Grill, Inc. began operating a restaurant at the same location, where it took possession of and used the equipment that was previously under lease by the prior owner, based on an oral agreement for use of the equipment with Sysco. After El Dorado also ceased operations, Sysco sued Danny Davis, vice president of El Dorado, for the remaining debt on the equipment. Following a bench trial, the county court awarded Sysco the amount owed, along with attorneys' fees. We hold that Davis's oral agreement to pay the debt on the equipment is enforceable under the partial-performance exception to the statute of frauds. We also hold that Davis was acting on behalf of El Dorado in making such agreement and, therefore, that the contractual rate of 18-percent interest based on Davis's written personal guaranty of El Dorado's debts applies to the

judgment. We modify the judgment to provide for 18-percent pre- and post-judgment interest, and affirm the judgment as modified.

### *Factual and Procedural Background*

Danny Davis was vice president of El Dorado Bar & Grill, which began operating a restaurant in Austin during February 2002. El Dorado operated in the space formerly occupied by Dam View Restaurant, which had ceased operations for financial reasons in January 2002.

Sysco sold produce, groceries, and equipment to El Dorado during the course of its restaurant operations. In addition, Sysco had furnished certain restaurant equipment under a lease agreement—including ovens, coolers, and bar supplies—to Dam View, and that equipment remained on the premises and was then used by El Dorado in its restaurant operation. Dam View owed Sysco $51,326.79 for the equipment at the time Dam View ceased operations.

In June 2002, Jeff Maurer, a Sysco marketing associate, spoke with Davis at the restaurant regarding the Dam View equipment. Davis entered into an oral agreement under which payments of $1,000 per month would be made against the unpaid amount of Dam View's equipment debt.[1] In September 2002, El Dorado made a payment of $1,000 to Sysco that was allocated to the Dam View equipment account. In October 2002, Sysco allocated another $1,000 from El Dorado's payments toward that account. Also in October, however, El Dorado declared bankruptcy, and in May 2003 El Dorado ceased operations altogether.

---

[1] Davis testified that such payments would be made only if the restaurant made sufficient profit. However, Maurer testified to the contrary, and the trial court's finding that Davis agreed to pay the amount owed for the Dam View equipment did not refer to any condition concerning El Dorado's making profits. Davis does not challenge the trial court's finding on this issue.

Sysco sued Davis in county court on June 27, 2003, to collect the unpaid debt on the Dam View equipment of $49,326.79.[2] On May 9, 2002, Davis had signed a personal written guaranty of amounts owed by El Dorado to Sysco. Following a bench trial, the county court entered judgment against Davis on June 26, 2008, awarding Sysco $49,326.79 for the Dam View equipment, along with pre- and post-judgment interest and attorneys' fees.

### *Partial Performance*

Davis contends that the trial court erred in finding that he agreed to be liable for the Dam View equipment debt. At trial, Sysco sought to attach liability to Davis under the alternative theories of (1) an oral agreement to answer for the equipment debt, and (2) quantum meruit. On appeal, Sysco has abandoned its quantum meruit theory. Therefore, we address only whether the judgment should be affirmed based on Davis's oral agreement to be responsible for the Dam View equipment debt.

Sysco concedes that the relevant agreement is subject to the statute of frauds and, therefore, that an exception to the statute of frauds must apply for the oral agreement to be enforceable. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(2) (West 2009); *Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 270 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Sysco contends that the oral agreement in this case is enforceable based on the partial-performance exception to the statute of frauds. *See Avila v. González*, 974 S.W.2d 237, 246 (Tex. App.—San Antonio 1998,

---

[2] Sysco also sued to recover the amount owed by El Dorado for groceries, produce, and equipment purchased by El Dorado after it commenced operations. Davis does not appeal the trial court's award of damages as to those purchases.

pet. denied). In its findings of fact, the trial court found that "Davis agreed to pay Sysco $1,000.00 per month against the unpaid amount of $51,326.79 for the Dam View Equipment." However, the trial court did not include a finding that the partial-performance exception applies.

When the trial court's findings of fact address a ground of recovery but omit an essential element, we may infer the omitted element because the judgment is presumed valid. *See* Tex. R. Civ. P. 299; *Hailey v. Hailey*, 176 S.W.3d 374, 383-84 (Tex. App.—Houston [1st Dist.] 2004, no pet.). An omitted finding will be deemed to support the judgment if evidence exists to support the finding. *See* Tex. R. Civ. P. 299; *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *Castano v. Wells Fargo Bank*, 82 S.W.3d 40, 43 (Tex. App.—San Antonio 2002, no pet.).[3] In reviewing the record to determine whether any evidence supports an implied finding, we consider only the evidence favorable to the finding and disregard any evidence or inferences to the contrary. *See Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 918 (Tex. 1978); *Alford v. Johnston*, 224 S.W.3d 291, 296 (Tex. App.—El Paso 2005, pet. denied).

Under the partial-performance exception to the statute of frauds, an oral contract may be enforced in equity if there is strong evidence establishing the existence of an agreement and its terms, the party seeking enforcement acted in reliance on the oral contract and suffered a substantial detriment for which he has no adequate remedy, and the other party would reap an unearned benefit if permitted to plead the statute. *See Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). Moreover, the partial performance must be

---

[3] An appellant may challenge the factual sufficiency of an implied finding. *See Castano v. Wells Fargo Bank*, 82 S.W.3d 40, 42 (Tex. App.—San Antonio 2002, no pet.). However, Davis has not challenged the factual sufficiency of a finding of partial performance.

unequivocally referable to the alleged oral agreement such that the performance itself constitutes persuasive evidence of the agreement's existence. *See id.* at 439-40.

There is evidence supporting a finding of the existence of an agreement and its terms. Both Maurer (representing Sysco) and Davis (representing El Dorado)[4] testified that they had a conversation regarding the Dam View equipment on the restaurant site, that they entered into an agreement for El Dorado to pay the debt, and that under the terms of the agreement Sysco would not repossess the equipment and El Dorado's monthly payments would be in the amount of $1,000. There was no evidence to contradict Davis's and Maurer's testimony on these points.[5]

---

[4] Regarding the capacity in which he was acting upon entering the agreement with Sysco to take on responsibility for Dam View's equipment debt, Davis testified as follows:

> Q.   Now when you were having that discussion with Mr. Maurer, were you acting and talking as vice-president of El Dorado?  Or, were you acting and talking as Danny Davis the individual?
>
> A.   El Dorado, Craig was there with me.
>
> Q.   So you were acting as vice-president of El Dorado?
>
> A.   Yes . . . .

In addition, Davis testified that during his conversation with Maurer he refused to personally guarantee the amount, and that after the conversation Sysco sent Davis a written personal guaranty covering the Dam View equipment debt but he refused to sign it.  Davis concedes that El Dorado, not Davis, made the two $1,000 payments that were allocated to the Dam View equipment account. Both checks containing those payments were drawn on El Dorado's account.  There is simply no evidence in the record that Davis was acting in his individual capacity when he entered into the oral agreement, or that he was without authority to act on behalf of El Dorado.  The evidence conclusively establishes that, in making the agreement to take on responsibility for Dam View's equipment debt, Davis was acting on behalf of El Dorado.

[5] Davis contends that the evidence is insufficient that he agreed, on behalf of El Dorado, to accept full responsibility for the equipment debt in its entirety. However, Maurer testified that Davis agreed for El Dorado to assume the debt, Davis testified that his intention when making the agreement was to pay off the debt, and there was no testimony to the contrary.

There is also evidence that Sysco acted in reliance on the agreement by partially performing its obligations under the agreement. The testimony of both Maurer and Davis indicates that Sysco would have repossessed the equipment in the absence of Davis's agreement to make payments on the amount due. Maurer testified as follows:

> Well, I . . . told Danny that there was equipment that was unpaid from Craig's previous concept there. And that if we—you know it's here in the restaurant. And I need to get—we need to see how I can get paid for that. If we are not going to get paid, then it has to be returned. And he said—and I don't recall when or where exactly in the restaurant—that . . . he would be responsible for that equipment to not have it taken away.

Likewise, Davis testified as follows:

> Q. . . . . Jeff came in and wanted to know whether y'all wanted the equipment or whether Sysco should take it away; is that fair?
>
> A. It was something like that in the first part of that conversation.
>
> Q. Okay. And you wanted El Dorado to be able to use the equipment?
>
> A. Yes.

There is no dispute that Sysco did not repossess the equipment following the oral agreement with respect to payment for the equipment. Davis's testimony confirms Sysco's reliance on the oral agreement:

> Q. And that is what you alleged Sysco agreed to?
>
> A. Well, they didn't pick the equipment up.

6

There is evidence that Sysco suffered a substantial detriment for which it has no adequate remedy. It is uncontroverted that of the $51,326.79 owed on the Dam View equipment, Sysco only received $2,000 from El Dorado. There is also evidence that El Dorado would reap an unearned benefit if permitted to plead the statute of frauds. It is uncontroverted that although Sysco only received two monthly payments from El Dorado for the Dam View equipment, the equipment was in the possession of El Dorado for its restaurant use during the course of its operations—from February 2002 to May 2003.

Finally, there is evidence that Sysco's partial performance was unequivocally referable to the oral agreement. Sysco did not repossess the equipment. Sysco established a separate account in its financial records described as the "Dam View equipment" account, and the two $1,000 payments made in September and October of 2002 were allocated to this account. Moreover, the September 2002 El Dorado check, signed by Davis's partner Craig Gatewood, contains the description "Equip 1000.00" and includes the account number of the Dam View equipment account established by Sysco.[6]

We conclude that legally sufficient evidence exists to support the finding that the partial-performance exception to the statute of frauds applies to the oral agreement entered into by El Dorado and Sysco. We infer, therefore, this omitted element in the trial court's findings in support of its judgment. *See* Tex. R. Civ. P. 299. Consequently, we affirm the trial court's

---

[6] El Dorado's bank refused to honor the check signed by Gatewood due to insufficient funds. Davis signed a new check on El Dorado's account that provided it was replacing the previous check and that included the description "E - 1000.00."

conclusion that Sysco is entitled to judgment against Davis for $49,326.79 attributable to the Dam View equipment.

### *Attorneys' Fees*

Davis contends that the trial court's award of attorneys' fees should be reversed. Specifically, Davis argues that attorneys' fees were unrecoverable as to the Dam View equipment debt because the trial court based Davis's liability on quantum meruit rather than contract, that Sysco failed to segregate out those unrecoverable fees, and that the amount of fees awarded is excessive without damages awarded for the Dam View equipment debt.

Each of Davis's arguments depends on his not being liable for the Dam View equipment debt based on breach of contract. We have held that Davis is liable based on breach of contract. Therefore, we affirm the trial court's award of attorneys' fees.

### *Applicable Interest Rate*

In its cross appeal, Sysco contends that the trial court erred by awarding pre-and post-judgment interest at only five percent on its awards of the Dam View equipment debt and attorneys' fees. Davis concedes that he personally guaranteed El Dorado's debts. Davis's written personal guaranty applies to "all amounts due and owing now, and from time to time hereafter" from El Dorado to Sysco, and it contains a provision governing the amount of interest that would apply to any such amounts. Moreover, we have held that El Dorado entered into an enforceable oral agreement to take on responsibility for Dam View's equipment debt. Since Davis personally

8

guaranteed El Dorado's debts to Sysco and the equipment debt is a debt of El Dorado, we look to Davis's personal guaranty of El Dorado's obligations to determine the proper interest rate.

The personal guaranty provides that "an interest charge of one and one-half (1.5%) percent per month, or the highest rate permitted by law, whichever is less, shall be assessed on any amount due and owing to Sysco by [Davis] under this Guaranty until collected." A contractual interest-rate provision is enforceable in a money judgment on that contract, but the rate may not exceed 18 percent per year. *See* Tex. Fin. Code Ann. § 304.002 (West 2006) (post-judgment interest); *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 823 (Tex. App.—Dallas 2008, no pet.) (pre-judgment interest). Therefore, the trial court judgment should be modified such that the rates of pre-judgment and post-judgment interest awarded are set at 18 percent.

### *Conclusion*

We modify the judgment of the county court such that the term "5%," each place it appears, is replaced with the term "18%." We affirm the judgment as modified.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson;
    Dissenting Opinion by Justice Henson

Modified and, as Modified, Affirmed

Filed:   December 4, 2009